**IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 5:26-bk-00512 |
| | ) | |
| STORJ LABS, INC., | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | Judge David L. Bissett |

**MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO DEBTOR'S MOTION TO STRIKE OBJECTION AND MOTION TO DISMISS**

Michael Ward and Robert Lamb (together, the "**Collateral Agents**"), in their capacity as Collateral Agents for certain entities with liens on shares of the Debtor (the "**Pledgees**"), file this Memorandum of Law in support of their Objection (the "**Objection**") to Debtor's *Motion to Strike Objection and Motion to Dismiss* [ECF No. 131] (the "**Motion to Stike**").

**FACTUAL HISTORY**

On December 17, 2024, the Pledgees[1] entered into a Stock Purchase Agreement (the "**SPA**") with Inveniam Capital Partners, Inc., ("**Inveniam**"), the parent company and DIP Lender of the Debtor, Storj Labs, Inc. (the "**Debtor**"). Under the SPA, the Pledgees agreed to sell their shares of Hedgehog Invest Limited (the "**Shares**") to Inveniam, and in partial consideration for the Pledgees' sale of the Shares to Inveniam, Inveniam executed a promissory note (the "**Note**") in favor of the Pledgees. Following defaults by Inveniam under the Note, on May 12, 2026, Inveniam and the Collateral Agents, on behalf of the Pledgees, executed a Forbearance Agreement (the "**Forbearance Agreement**"), whereunder (a) the Pledgees agreed to forbear from exercising their rights and remedies against Inveniam in respect of such defaults under the Note and SPA and

[1] The Pledgees referred to herein include the Collateral Agents, as well as the Adam and Stephanie Howarth Revocable Trust, Bharath Srinivaas Rajagopolan, Four Peaks LLC, Khalid Mohamed Murgian, Leila Govi, Pembroke US Investments LLC, Randolph Investments Ltd, Seedrs Nominees Limited of Stylus Building, Boutique Capital Pty Ltd ATF Tectonic Digital Asset Opportunities Fund, and Watermill Ltd.

(b) Inveniam executed a Security Agreement (the "**Security Agreement**") in favor of the Collateral Agents, for themselves and on behalf of the Pledgees, pursuant to which Inveniam granted the Collateral Agents "a senior security interest in all right, title and interests of [Inveniam] and its subsidiaries in and to all equity interests in, and all assets of, the [Debtor] and its subsidiaries." *See* Security Agreement, ¶ 2; Security Agreement, Attachment 1. Through the Forbearance Agreement, Inveniam also (i) represented to the Pledgees and the Collateral Agents that Inveniam "is the sole legal and beneficial owner" of certain collateral, including all of the equity interests in and assets of Debtor; (ii) covenanted "not to create, incur, assume, or permit to exist any lien or encumbrance" on any of such collateral, including all of the equity interests in and assets of Debtor; (iii) acknowledged that "[Inveniam] has no claims, defenses, setoffs, or counterclaims against the [Pledgees and Collateral Agents], and all obligations of [Inveniam] under the Note and the other Loan Documents are valid, binding, and enforceable in accordance with their terms[.]"; and (iv) agreed that the occurrence of any event of default under the Forbearance Agreement shall "automatically and immediately terminate" the forbearance period thereunder "without any notice or demand by [the Collateral Agents or Pledgees]." *See* Forbearance Agreement, §§ 5.1(f), 8.3(b), 2.1(d), & 7.1. On July 31, 2026, Inveniam defaulted under the Forbearance Agreement by failing to make the first payments due thereunder.

The Collateral Agent and Pledgees have a pecuniary and economic interest in Storj by virtue of the foregoing pledge by Inveniam who is both Debtor's owner and the proposed DIP lender.

## PROCEDURAL HISTORY

On July 26, 2026 (the "**Petition Date**"), the Debtor commenced the above-captioned chapter 11 bankruptcy case in the Bankruptcy Court for the Northern District of West Virginia (the

"**Bankruptcy Case**"). On August 2, 2026, the Debtor filed their *Motion to Authorize Post-Petition Financing and Use of Cash Collateral, and Schedule Final Hearing* [ECF No. 14] (the "**DIP Motion**") requesting, *inter alia*, that the Court (i) authorize Inveniam to provide the Debtor $388,000 (the "**DIP Loan**"), (ii) authorize the Debtor to grant Inveniam "continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first position post-petition security interests in and Liens" (the "**DIP Liens**") on the Debtor's assets, and (iii) find that Inveniam "is a good faith lender within the meaning of section 364(e) of the Bankruptcy Code" and "entitled to all of the protections that section affords." By order dated August 5, 2026 [ECF No. 25] (the "**First Interim DIP Order**"), the Court entered an order authorizing the Debtor to obtain the first installment of the DIP Loan $100,000 on an interim basis and setting a final hearing on the DIP Motion (the "**Final Hearing**") for August 25, 2026, at 1:30 p.m.

On August 21, 2026, the Collateral Agents filed an Objection and Reservation of Rights to the DIP Motion [ECF No. 58] (the "**DIP Objection**"), stating that they intended to file a Motion to Dismiss or Transfer the Bankruptcy Case and requesting that the Court (i) stay the Final Hearing on the DIP Motion pending resolution of the Motion to Dismiss or Transfer, or (ii) alternatively, clarify in any order granting the DIP Motion that nothing in such order shall impair or affect the validity of any lien or security interest of the Collateral Agents as to Inveniam or the Debtor. On August 24, 2026, the Collateral Agents filed their *Motion to Dismiss Debtor's Chapter 11 Case Pursuant to 11 U.S.C. § 1112(b)(1), or, in the Alternative, Change Venue* [ECF No. 69] (the "**Motion to Dismiss/Transfer**") stating that, based on the dearth of information provided by the Debtor at that point, the Debtor's parent and proposed DIP Lender's existing defaults to the Pledgees, the lack of a realistic prospect of reorganization, and the lack of any basis for venue in the Northern District of West Virginia, the Debtor filed the Bankruptcy case in bad faith, venue for

the Bankruptcy Case is improper, and the Bankruptcy Cased should be dismissed or, alternatively, transferred to a proper venue.

Following negotiations with the Collateral Agents, on August 24, 2026, the Debtor filed a *Motion to Continue Hearing on Final Post-Petition Financing, use of Cash Collateral, to Enter Second Interim Order Authorizing Post-Petition Financing, to Use Cash Collateral, and to Continue Final Hearing and Objection Thereto* [ECF No. 72] (the "**Continuance Motion**"), stating that the Collateral Agents agreed not to object to entry of a second interim financing order as long as such second interim order preserved the Collateral Agents' rights to assert their senior security interests in the all equity interests and assets of the Debtor. The Debtor also requested that the Court authorize the Debtor to obtain a second installment of $160,000 under DIP Loan and to continue the Final Hearing on the DIP Motion. By order dated August 26, 2026 [ECF No. 88] (the "**Second Interim DIP Order**"), the Court granted the Continuance Motion.

On August 28, 2026, the Debtor filed Amended Schedules E, A/B, G [ECF No. 102, 104, & 105] (the "**Amended Schedules**). According to the Debtor's Amended Schedule E/F, the total amount of nonpriority unsecured claims is $7,100,297.96 (and this includes the debt owed to insider Inveniam). According to the Debtor's Amended Schedule A/B, the estimated total value of the Debtor's assets is $4,339,500.00. Since the Petition Date eighteen creditors have filed proofs of claims against the Debtor, 17 of which assert priority claims (the "**Priority Claims**"). According to the Claims Register, the total amount of the Priority Claims is $4,290,193.64.

On September 8, 2026, Mark Harvilla, and Nikhal Jain, creditors of the Debtor, filed their *Motion to Dismiss for Lack of Venue, or in the alternative to Transfer Case to a Proper Venue, such as the Northern District of Georgia* [ECF No. 127] (the "**Joinder**"), under which Harvilla and Jain joined in and supported the Motion to Dismiss/Transfer.

## ARGUMENT

### I. Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12 Do Not Apply to the DIP Objection or Motion to Dismiss/Transfer.

Rule 9014(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") provides:

> Unless this rule or a court order provides otherwise, the following rules apply in a contested matter: 7009, 7017, 7021, 7025–7026, 7028–7037, 7041–7042, 7052, 7054–7056, 7064, 7069, and 7071. At any stage of a contested matter, the court may order that one or more other Part VII rules apply.

Bankruptcy Rule 1017 also provides that "Rule 9014 governs a proceeding to dismiss a case or suspend to dismiss or suspend a case . . . ." Bankruptcy Rule 7012 is not among the Part VII rules that apply to a contested matter, absent a court order providing otherwise.

The Motion to Strike requests that the Court strike the DIP Objection and Motion to Dismiss/Transfer "pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure." However, the Court has not ordered that Bankruptcy Rule 7012(b) applies to the DIP Objection or Motion to Dismiss/Transfer. Indeed, on September 2, 2026, the Court entered an Order [ECF No. 115] (the "**Scheduling Order**") prepared by the Debtor setting forth the procedures governing the adjudication of the DIP Objection and Motion to Dismiss/Transfer, which does not contain any provision stating that Bankruptcy Rule 7012(b) applies to the DIP Objection or Motion to Dismiss/Transfer.

The Debtor has not filed a response to the Collateral Agents' Motion to Dismiss/Transfer, as it was required to do so by the Scheduling Order. *See* ECF No. 115 at ¶ 4: "The deadline by which the Debtor shall file a written response to the Dismissal Motion is extended to **September 8, 2026**."

Accordingly, the Motion to Strike is procedurally improper and should be overruled and dismissed.

**II. The Collateral Agents are Parties in Interest and Have Standing to Object to the DIP Order and to Move to Dismiss or Transfer the Debtor's Bankruptcy Case, and the Court has Subject Matter Jurisdiction Regarding the DIP Objection and Motion to Dismiss/Transfer.**

**A. The Collateral Agents Are Parties in Interest.**

"A party in interest, ***including*** the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b) (emphasis added).

> The plain meaning of [party in interest] . . . refers to entities that are potentially concerned with or affected by a proceeding. . . . In 1978 . . . Congress moved from an exclusive list to the general and capacious term 'party in interest,' accompanied by a nonexhaustive list of parties in interest. These parties 'may raise and may appear and be heard on any issue.' 11 U.S.C. § 1109(b). . . . § 1109(b) was 'designed to serve . . . the policies of inclusion underlying the chapter 11 process.'

*Truck Insurance Exchange v. Kaiser Gypsum Company, Inc.*, 602 U.S. 268, 278-81 (2024) (quoting 7 Collier on Bankruptcy ¶ 1109.02.

If granted, the relief requested in the DIP Motion would affect the Collateral Agents' pecuniary interests. Under the SPA, Note and Forbearance Agreement, the Pledgees are creditors of the Debtor's proposed DIP lender and the Pledgees have liens on all Inveniam's equity interests in the Debtor as well as a purported lien on all of the Debtor's assets. Inveniam has defaulted under the Forbearance Agreement and, although not required by the Forbearance Agreement, the Collateral Agents have issued a notice of an event of default, the occurrence of which automatically created an irrevocably proxy in favor of the Pledgees on Inveniam's equity interests in the Debtor.

The DIP Motion requests that the Court (i) authorize Inveniam to provide the Debtor $388,000, (ii) authorize the Debtor to grant Inveniam "continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first position post-petition security interests in and Liens" on all of the Debtor's assets (the "**DIP Liens**"), and (iii) grant Inveniam the protections of 11 U.S.C. § 364(e), which would prevent the grant of DIP Liens or the priority position of the DIP Liens from being reversed or modified on appeal.

In other words, the DIP Motion requests that an entity that has defaulted on its obligations to the Collateral Agents be allowed to lend the Debtor $388,000, be granted first priority liens on assets that the same entity has already pledged to the Collateral Agents, and that the grant of these first priority liens be protected from reversal or modification on appeal. The Collateral Agents have a manifest concern with these requests which, if granted, would affect the Collateral Agents' rights and security interest in Inveniam's interests in the equity and assets of the Debtor. Indeed, the Debtor acknowledged these concerns in its *Motion to Continue Hearing on Final Post-Petition Financing, use of Cash Collateral, to Enter Second Interim Order Authorizing Post-Petition Financing, to Use Cash Collateral, and to Continue Final Hearing and Objection Thereto* [ECF No. 72] (the "**Continuance Motion**"), where it stated that the Collateral Agents agreed not to object to entry of a second interim financing order as long as that second interim order preserves the Collateral Agents' rights to assert their senior security interests in the all equity interests and assets of the Debtor, and pursuant to that agreement with Collateral Agents, requested that the Court include in such second interim order:

> language preserving [the Collateral Agents'] rights to assert that [they have] a senior security interest in all right, title and interests of Inveniam and its subsidiaries in and to all equity interests in, and all assets of the Debtor, including any rights Inveniam has or may have under the DIP Credit Agreement, and/or 11 U.S.C. § 364.

Continuance Motion, p. 2-3.

For the same reasons, the Pledgees are also parties in interest with respect to the Debtor's bankruptcy case as a whole. The Collateral Agents are affected by and have a concern with Debtor's lack of good faith intent to reorganize.

After the Collateral Agents filed the Motion to Dismiss/Transfer, the Debtor filed its Amended Schedules. While the Amended Schedules still lack crucial information (e.g., the executory contracts under which the Debtor has asserted elsewhere it is receiving revenue from its existing customers, and the specific intellectual property contained in the products identified its Amended Schedule A/B), the Amended Schedules, together with the Priority Claims, indicate that chance of an effective reorganization of the Debtor is unrealistic. Under 11 U.S.C. § 1129(a)(9), unless holders of priority claims agree to different treatment of their claims, priority claims must be paid in full for a plan to be confirmed. According to the claims register, the current total amount of the Priority Claims is $4,290,193.64, and according to the Debtor's Amended Schedule E/F, the total amount of unsecured claims is $7,100,297.96. According to the Debtor's Amended Schedule A/B, the Debtor estimated total value of its assets to be $4,339,500.00. This last amount was dubiously calculated by adding together estimated value of two of the Debtor's software products and the value of the Debtor as a whole. But the Debtor has provided no further information on the alleged assets to be sold or their values.

The dearth of information the Debtor has provided coupled with the Debtor's parent and proposed DIP Lender's existing defaults to the Pledgees, and the lack of realistic possibility of an effective reorganization of the Debtor indicate that the Debtor filed its bankruptcy case in bad faith and is merely seeking a means to hinder and delay it and its parent Inveniam's creditors' collection efforts. Because the Collateral Agents possess liens on all of Inveniam's interests in the equity and

assets of the Debtor, the Collateral Agents are affected by and have a concern with Debtor's lack of good faith intent to reorganize.

**B. The Collateral Agents Have Standing with Respect to the DIP Motion and the Debtor's Bad Faith.**

To demonstrate Article III standing, a party must establish:

> (1) an injury-in-fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). A threatened injury constitutes an "injury-in-fact" when it is certainly impending. *Id.* at 272 (citing *Clapper v. Amnesty International USA*, 538 U.S. 398, 409 (2013)).

As stated above, the relief requested in the DIP Motion would, if granted, authorize an entity that has defaulted on its obligations to the Collateral Agents to lend the Debtor $388,000, grant that entity first-priority DIP Liens on assets that entity has already pledged to the Collateral Agents, and protect such DIP Liens and their first-priority position from reversal or modification on appeal. This relief would constitute a concrete and particularized invasion of the Collateral Agents' legally protected in interest in (i) Inveniam's fulfillment of its obligations under the Forbearance Agreement, and (ii) the value and priority of the liens Inveniam granted the Collateral Agents in its interests in the Debtor's equity and assets.

First, Inveniam's existing defaults under the Note and Forbearance Agreement constitute injuries-in-fact. Inveniam has advanced and seeks to continue to advance its scarce cash on hand to the Debtor while continuing events of default exist under the Forbearance Agreement. As such, Inveniam's failure to cure such defaults is fairly traceable to Inveniam's past and potential future

advances to the Debtor pursuant to the First and Second Interim DIP Orders any potential future order granting the DIP Motion, and the Debtor's acceptance of such advances.

Second, without protective language reserving the Collateral Agents and the Pledgees' rights in all Inveniam's rights in the equity and assets of the Debtor, including any rights Inveniam has or may have under the relief requested in the DIP Motion and/or 11 U.S.C. § 364, the Collateral Agents face the certainly impending risk of having the liens Inveniam granted them under the Forbearance Agreement diminish in value and possibly be subordinated to the DIP Liens. This threat to the value and priority of the liens Inveniam granted to the Collateral Agents under the Forbearance Agreement is directly traceable to the relief requested in the DIP Motion.

Both of these injuries are redressable either by denying the DIP Motion on a final basis or including protective language reserving the Collateral Agents and the Pledgees' rights in all Inveniam's rights in the equity and assets of the Debtor, including any rights Inveniam has or may have under the relief requested in the DIP Motion and/or 11 U.S.C. § 364 in any final order granting the DIP Motion.

Both of these injuries are also fairly traceable to the Debtor's lack of good faith in filing this proceeding. The very existence of this proceeding has caused the Collateral Agents and the Pledgees to suffer injuries-in-fact. If the Debtor had a good faith intent to reorganize and a realistic ability to do so, such reorganization would at least improve its parent's ability to cure its defaults under the Note and Forbearance Agreement and improve the value of the liens Inveniam pledged to the Collateral Agents. But given the Debtor's lack of candor, the full amount of the priority claims against the Debtor as compared with the value of the Debtor's assets, and the Debtor's inability to explain how venue in this district is proper, it is highly likely that the Debtor will not be able to confirm a plan and reorganize and never intended to do so in good faith. As such, the

Collateral Agents' injuries are fairly traceable to the Debtor's bad faith. Dismissing the Bankruptcy Case would redress these injuries by preventing further advances of Inveniam's scare cash on hand to the Debtor rather than the Pledgees and removing the stay on the Collateral Agents' collection efforts in connection with the Debtor's equity and assets.

### C. The Forbearance Agreement is Valid and Effective.

In its Memorandum in Support of its Motion to Strike [ECF No. 131] (the "**Brief**"), the Debtor labels the Forbearance Agreement "non-binding" without any explanation apart from its unsubstantiated assertion that the Forbearance Agreement constitutes a fraudulent transfer and irrelevant observations that (i) the Forbearance Agreement was executed less than 90 days before the Petition Date, (ii) the first payment under the Forbearance Agreement was due on July 31, 2026, after the Petition Date, and (iii) the Debtor did not sign the Forbearance Agreement as a separate entity.

These allegations lack merit. First, Inveniam is NOT the Debtor and Inveniam's equity securities are NOT property of Debtor's estate. Second, Inveniam is liable to the Pledgees on account of the Note and a forbearance agreement whereby the secured party agrees to forbear in consideration, in part, of the grant of collateral. This is not a fraudulent conveyance—and certainly is not a fraudulent conveyance as to the Debtor.

Second, the fact that the Forbearance Agreement was executed within the ninety-day period prior to the Petition Date is irrelevant as to its validity or effectiveness. Insofar as the Debtor is suggesting Inveniam's grant of liens in the Debtor's equity and assets thereunder was a preferential transfer under 11 U.S.C. § 547, the Debtor is mistaken. A transfer must be made on account of an antecedent debt ***owed by the debtor*** before such transfer was made to constitute an avoidable preferential transfer. 11 U.S.C. § 547(b)(2).

Third, the fact that Inveniam's first payment under the Forbearance Agreement was due on July 31, 2026, after the Petition Date, is also irrelevant to the validity or effectiveness of the Forbearance Agreement or the Collateral Agents' standing or party in interest status.

The Debtor does not explain how the due date for the first payment under the Forbearance Agreement (the "**Due Date**") is relevant to the existence or validity of the Forbearance Agreement. Nor does the debtor explain how the Due Date being a few days later than Petition Date is relevant to the Collateral Agents' party in interest status or standing. While the Due Date did indeed take place a few days after the Petition Date, the injuries set forth above are nevertheless fairly traceable to the DIP Motion and the Debtor's lack of good faith and affect the Collateral Agents' interests. The DIP Motion was filed on August 2, 2026—after the Due Date—and all advances to the Debtor thereunder took place after the Due Date. And while the Debtor lacked a good faith intent to reorganize prior to the Due Date, the Debtor continued to lack a good faith intent and reasonable ability to reorganize thereafter. The fact that the Debtor lacked a good faith intent and reasonable ability to reorganize a few days prior to the Due Date does not prevent the Collateral Agents' injuries from being fairly traceable to the Debtor's bad faith and redressable by dismissal of this proceeding.

Fourth, while the Debtor did not sign the Forbearance Agreement or the Security Agreement thereunder, in the Forbearance Agreement, Inveniam represented that the it was "the sole legal and beneficial owner" of all equity interests in and assets of the Debtor, and had the right and authority grant a security interest in all equity interests in and assets of the Debtor. The Debtor has not disputed this representation. As such, the fact that the Debtor did not sign the Forbearance Agreement is not relevant to its existence or validity or the Collateral Agents' standing or party in interest status.

**III. Venue Should be Transferred to Georgia.**

The Debtor conveniently fails to address the Collateral Agents (and the Joinder by creditors Mark Harvilla and Nikhil Jain [ECF No. 127]) that the venue of this bankruptcy case is improper in West Virginia. Nothing in the bankruptcy petition, schedules, or statement of financial affairs, as amended, provides an inkling of reason as to why the Bankruptcy Case was filed in this jurisdiction. There are no creditors in West Virginia. The Debtor's only address for its principal place of business is and has always been in Georgia. The rationale stated by Debtor's counsel for filing here, *i.e.,* that cases move quickly, is not a basis for venue. Moreover, there is no evidence that a bankruptcy court in Georgia (or in Delaware, where the Debtor is incorporated) does not move quickly. The Debtor does not address the improper venue in its motion because it cannot do so and hope to stay venued in this district.

Venue in this court is not proper, and this Court should transfer the case to a proper venue in Georgia where the Debtor is headquartered and has always operated its principal place of business.

## CONCLUSION

Because the Collateral Agents are parties in interest and have standing to object to the DIP Motion and move for the dismissal of this proceeding, the court has subject matter jurisdiction over the Collateral Agents' DIP Objection and Motion to Dismiss/Transfer. Moreover, the Motion to Strike is procedurally improper because Fed. R. Bankr. P. 7012 does not apply to contested matters, absent a court order providing otherwise, and the Court has not ordered and should not order otherwise. Accordingly, the Motion to Strike should be denied.

WHEREFORE, Michael Ward and Robert Lamb, in their capacity as Collateral Agents for the Pledgees, respectfully request that the Court deny and overrule the Debtor's Motion to Strike.

Respectfully submitted,

Dated: September 14, 2026

TUCKER ARENSBERG, P.C.

______________________________

Lauren Hutchins McCartney, Esq. (WV ID 12304)
Judith K. Fitzgerald, Esq. (PA ID No. 18110)
*Admitted pro hac vice*
Beverly Weiss Manne, Esq. (PA ID No. 34545)
*Admitted pro hac vice*
Maribeth Thomas, Esq. (PA ID No. 208376)
*Admitted pro hac vice*
George A. R. Balchunas, Esq. (PA ID No. 338421)
*Admitted pro hac vice*
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
lmccartney@tuckerlaw.com
jfitzgerald@tuckerlaw.com
bmanne@tuckerlaw.com
mthomas@tuckerlaw.com
gbalchunas@tuckerlaw.com

*Counsel for Michael Ward and Robert Lamb, in their capacity as Collateral Agents for the Pledgees*

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on September 14, 2026, a true and correct copy of the foregoing *Memorandum of Law in Support of Objection to Debtor's Motion to Strike Objection and Motion to Dismiss* filed by Michael Ward and Robert Lamb, in their capacity as Collateral Agents for certain entities with liens on shares of the Debtor, was served on all parties requesting electronic notice via the Court's CM/ECF System and upon the below parties via email at the addresses listed below.

Christopher R. Arthur, Esq.
Spilman Thomas & Battle
Email: carthur@spilmanlaw.com

*Debtor's Counsel*

Spencer D. Elliott, Esq.
Lewis Gianola, PLLC
Email: selliott@lewisgianola.com

*Counsel for Inveniam Capital Partners, Inc.*

*/s/ George A. R. Balchunas*
George A.R. Balchunas, Esq.