**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In RE:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 26-62642-PWB** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

**EXPEDITED MOTION FOR ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND SALE PROCEDURES, (B) SCHEDULING FINAL DEADLINE TO SUBMIT BIDS, AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

Storj Labs, Inc., debtor-in-possession in the above-captioned case (the Debtor") respectfully submits this Expedited Motion (the "Motion") for entry of an order: (A) Establishing Bidding and Sale Procedures, (B) Scheduling Final Deadline to Submit Bids, and (C) Approving the Form and Manner of Notice Thereof. The Debtor intends to facilitate Debtor's sale of two non-core assets identified as Valdi and Object Mount which are more particularly described below, free and clear of all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. § 363(b) and 363(f), with valid liens attaching to proceeds in the same order of priority; and (D) granting related relief, including an expedited hearing. In support of this Motion, Debtor moves pursuant to sections 105, 363, 365 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for the entry of the following orders:

(a) an order (the "Bidding Procedures Order"), substantially in the form attached:

(i) approving proposed bidding and sale procedures (the "Bidding Procedures") and related Bid Deadline (as defined below) in connection with the sale or sales (collectively, the "Sale Transaction") of two of Debtor's non-core assets (collectively, the "Assets") described in detail below;

(ii) approving the date, and form and manner of notice, and related Sale Hearing (as defined herein), including the form and manner of notice attached hereto as **Exhibit A** (the "Notice"); and

(iii) granting certain related relief as described herein;

(b) entry of an order (the "Sale Order"):

(i) authorizing the Sale Transaction, free and clear of all liens, claims and encumbrances; and

(ii) granting such other relief as is necessary or advisable related to the foregoing.

In support of this Sale Motion, the Debtor respectfully represents as follows:

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding. Venue is proper under 28 U.S.C. §§ 1408 and 1409. Relief is authorized under sections 105(a), 363, 503, and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6004, 9007, and 9014.

## INTRODUCTION

2. On July 26, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Case. The Debtor has identified two assets that are not necessary for the effective reorganization of the Debtor's estate. The Debtor asserts that the sale of those two assets will generate cash proceeds to assist the Debtor with implementing its plan of reorganization.

## ASSETS TO BE SOLD

3. The assets to be sold (the "Assets") consist of the following:

A. Valdi.ai: The Debtor's division identified as Valdi.ai "Valdi".

Valdi is a web application that provides an online marketplace to connect customers who need access to Graphics Processing Units (GPUs, specialized electronic chips) on an on- demand rental basis. Valdi connects buyers who wish to rent GPUs to suppliers who have GPUs to rent. The software operates as a 2-sided marketplace for GPUs. Valdi assists suppliers (businesses and datacenters with underutilized capacity) to monetize their GPUs by listing them on the Valdi marketplace. Listings are generally anonymized giving the listing entity freedom to price idle resources more aggressively that retail resources purchased directly from the entity. Buyers also can access hard-to-find GPUs on-demand for short term use via a pay-as-you-go model, or as reserve capacity with prepaid or flexible terms.

The sale of the Valdi Asset includes the following:

- Intellectual property: the Valdi software platform, source code and object code, proprietary algorithms, copyrights, trade secrets, and all related documentation and technical specifications;
- Brand: the "Valdi" name, trademarks, service marks, trade names, logos, and associated brand and goodwill;
- Digital properties: domain names, websites (including valdi.ai), and social media handles and accounts;
- Commercial contacts: vendor, supplier, reseller, partner, and hosting/infrastructure agreements used in the Business (subject to consents);
- Inbound licenses: third-party software and technology licenses used in the Business (subject to consents);
- Cloud infrastructure: cloud accounts, environments, and configurations (e.g., AWS/Azure/GCP), API keys, credentials, and deployment/DevOps tooling used in the Business;
- Books and records: records and files relating to the Purchased Assets, customers, and operation of the Business (originals or copies);
- Marketing assets: sales, product, and marketing collateral and materials;

- Prepaids: prepaid expenses, deposits, and advance payments relating to Valdi; and
- Goodwill: all goodwill and going-concern value of Valdi.

B. Object Mount: The Debtor's division identified as "Object Mount".

Object Mount is client software for Mac, Linux and Windows that enables mounting S3 compatible object storage as a local drive, including full POSIX support. The software enables a range of use cases, including media and entertainment workflows, backup, and data streaming for AI/ML workloads. The software includes the ability to accelerate performance via caching and preload logic.

The sale of Object Mount Asset includes the following:

- Intellectual property: the Object Mount software, source code and object code, patents and patent applications, copyrights, trade secrets, and all related documentation and technical specifications. The specific patents included are:
- US 2025/0272265 A1 – Improvements in and Relating to Object-Based Storage
- EP 4,535,182 A1 – Computer-Implemented Method for Prefetching Data
- EP 4,535,183 A1 – Improvements in and Relating to File Storage
- Brand 1: the "Object Mount" name, trademarks, service marks, trade names, logos, and associated brand and goodwill;
- Brand 2: the "airleap" brand including the airleap.com domain;
- Digital properties: domain names, websites (including objectmount.com);
- Inbound licenses: third-party software and technology licenses used by Object Mount (subject to consents);
- Cloud infrastructure: cloud accounts, environments, and configurations (e.g., AWS/Azure/GCP), API keys, credentials, and deployment/DevOps tooling used by Object Mount;

- Books and records: records and files relating to the Purchased Assets;
- Marketing assets: sales, product, and marketing collateral and materials;
- Ancillary rights: rights under warranties, guarantees, indemnities, and confidentiality/non-compete covenants relating to the Purchased Assets, and claims and causes of action relating to the Purchased Assets or Assumed Liabilities for post-Closing periods; and
- Goodwill: all goodwill and going-concern value of Object Mount.

4. Estimated Value: **Schedule A** estimates the fair market value of the assets as follows:

A. Valdi: $25,000.00.

B. Object Motion: $350,000.00.

**ALLEGED LIEN SUBJECT TO BONAF FIDE DISPUTE**

5.On May 27, 2027, Robert Lamb and Michael Ward filed UCC-1 Financing Statements in Delaware against the Debtor which UCC-1 identified collateral as "All of assets of Debtor and its subsidiaries, whether now existing or hereafter from time to time acquired, and all proceeds therefrom. To the best of Debtor's knowledge the UCC-1's were filed without consent of the Debtor and the Debtor received no consideration, was not a party to a note, to a security agreement, or any other agreement. Moreover, the UCC-'s were filed within 90 days of the filing of Debtor's bankruptcy case and therefore are avoidable under the provisions of the Bankruptcy Code, including, without limitation, 11 U.S.C. Sections 544, 547, 548 and 551.

No other alleged secured liens exist that attach to Valdi or Object Mount. Inveniam Capital Partners, Inc. ("Inveniam") does possess an interest to the sale proceeds in the amount of 33.33% of the total proceeds pursuant to the debtor-in-possession financing agreement approved by the Court. Additionally, Michael Ward and Robert Lambert on behalf of Collateral Agents assert that they possess a security agreement with Inveniam granting them rights to the sale proceeds which they assert would take priority over Inveniam to the sale proceeds.

**THE SALE PROCESS AND RELATED ITEMS**

**A. The Proposed Sale Transactions and Marketing Process**

6. Debtor has determined that the best opportunity that creditors may have to recover value from the bankruptcy estate is through the sale of the Debtor's non-core assets.

7. Prior to the filing of this Motion, Debtor privately solicited interest from individuals and entities that Debtor identified as prospective purchasers of Debtor's Property as a going concern. Debtor is currently marketing the business assets to potential purchasers that it has identified.

**B. The Need for an Expedited Notice and Sale Process**

8. The Debtor has filed this Sale Motion on an expedited basis to ensure the Debtor is able to complete the sale of the Assets in a timely manner. Debtor needs the proceeds generated from the sale of these noncore assets to continue operating.

**C. The Deadlines Contained in the Bidding Procedures Are Reasonable and Will Provide an Adequate Opportunity for Interested Parties to Formulate and Submit Bids**

9. In formulating the procedures and time periods, the Debtor had two principal objectives: (a) providing adequate and appropriate notice to parties in interest and to potential purchasers; and (b) efficiently selling the Assets. The Debtor believes the Bidding Procedures achieve

both objectives under the facts and circumstances of this Chapter 11 Case. In the exercise of its business judgment, Debtor believes the parties who may have an interest in bidding are among its creditors, investors, and key individuals/entities who function in the industries relating to the two assets being sold. Thus, the timeline in the Bidding Procedures will prevent no party interested and capable of purchasing the Assets from conducting due diligence and submitting a bid.

10. The Debtor identified and communicated with potential purchasers who may have an interest in purchasing the technology identified above. Concerning Object Mount, the Debtor received an offer to purchase Object Mount shortly after the filing of bankruptcy for $315,000. The Debtor requested that potential purchaser to act as a stalking horse bidder, but it declined to act as a stalking horse bidder. It further communicated that it desired to stay outside of the potential disputes between Inveniam Capital Partners Inc. and Ward/Lamb, especially after observing a recent hearing where that dispute was highlighted.

Due to the Chapter 11, the Debtor communicated to that potential purchaser that it will offer Object Mount through the bankruptcy process, including an approved sales process. The Debtor will undertake commercially reasonable marketing efforts, including advertising through online platforms, direct outreach to potential buyers, email marketing, and other customary methods to sell the assets.

11. Debtor proposes the following sale process:

<u>Sales Process</u>

- Create a standard bid and transaction structure package for potential buyers, including
  - Presentation featuring Valdi
  - Document listing out the assets for sale for Valdi
  - Presentation featuring Object Mount
  - Document listing out the assets for sale for Object Mount
  - Template for expected offer format (cash, terms, timing to close sale once Court approves sale)
- Advertise separately, sale of Valdi and Object Mount on Storj website;

- Send emails to all potential buyers who had previously showed interest in acquiring these assets from Storj Labs;
- Provide access to contract documents and due diligence via an online a data-room and track all those who gain access, after they sign a NDA;
- Schedule a 1.5-hour online call (one for Valdi and separately one for Object Mount) for potential, qualified bidders to join where the Debtor, including its key engineers, to go through the product and make a technical resource available to demonstrate the product.

The sale will be conducted by allowing bidders to submit bids until the close of business on November 15, 2026.

Submission of Bids

- Any potential bidders will be instructed to submit their bids in writing to the Debtor's accountant, Robert Nisztendirk, Woomer Nistendirk & Associates ("CPA") at the following: Woomer Nistendirk & Associates, Certified Public Accountants, Attention: Robert L. Nistendirk, CPA, 231 Capitol Street, Suite 400, Charleston, West Virginia 25301. Bids also can be submitted via e-mail to RNistendirk@wnacpasw.com. Those bids will remain sealed until after 4:00 pm est. on November 15, 2026. After the bid process is closed, the CPA will communicate the winning bidder.

- Net proceeds shall be held in escrow in the Debtor's counsel's IOLTA account pending further order of this Court.

## BASIS FOR RELIEF REQESTED

### A. The Sale and the Bidding Procedures are a Proper Exercise of the Debtor's Business Judgment and Will Maximize the Value of the Proposed Purchased Assets for the Benefit of the Debtor's Estate and Creditors

12. Entry of the Sale Order approving the final sale of the Assets at the conclusion of the Sale Hearing is authorized and appropriate under the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the powers of a trustee in respect to various matters including sales under section 363(b) of the Bankruptcy Code.

13. Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing … to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105 of the Bankruptcy Code grants to the Court the authority to "issue any order, process or judgment necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

14. Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under Section 363(b) free and clear of any interest in such property if, among other things: (i) the price at which the property is to be sold is greater than the aggregate of the liens on such property; (ii) the interests are subject to a bona fide dispute; (iii) the entities asserting liens on the property consent to its sale; or (iv) the entities asserting liens on the property could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests. 11 U.S.C. § 363(f). One or more of these standards is met.

15. Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g., In re EaglePicher Holdings, Inc.*, 2005 WL 4030132 (Bankr. S.D. Ohio 2005); *In re Martin*, 91 F.3d 389, 395 (3rd Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

16. The key consideration is this Court's finding that a good business reason exists for the sale. *Stephens Industries, Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *see also, Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp., (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999).

> Whether the proffered business justification is sufficient depends on the case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors, and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the assets of the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*In re Walter*, 83 B.R. 14, 19-20 (9th Cir. Bankr. 1988), citing *In re Lionel Corp.*, 722 F.2d 1063, 1070-71 (2nd Cir. 1983).

17. Once the Debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bonier. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

18. In light of circumstances that precipitated the commencement of this Chapter 11 Case, the Debtor, in its business judgment, believes that a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, will maximize the value of the Assets for the benefit of the Debtor's creditors and bankruptcy estate. Several sound business reasons support the Debtor's position.

19. A sale of the Assets preserves the Debtor's estate because it generates cash proceeds to be used to allow the Debtor to continue operating and to propose a chapter 11 plan of reorganization. The Debtor has proposed a fair and open process for achieving the objective of obtaining the highest or best offer for the Assets. Accordingly, the proposed bidding procedure will

allow the highest or best bidder to purchase the Assets, thereby maximizing the return to the Debtor's estate.

20. The Debtor believes that the bidding procedure is commercially reasonable and is in the best interest of the Debtor, its estate and creditors and will maximize the value obtained from the sale of the Assets. The sale of the Assets will be subject to competing bids, enhancing the Debtor's ability to receive the highest or otherwise best value for the Assets.

21. In addition, all creditors and parties-in-interest will receive adequate notice as set forth herein. Such notice is reasonably calculated to provide timely and adequate notice to the Debtor's known creditor constituencies, those parties most interested in this Chapter 11 Case, those parties potentially interested in bidding on the Assets, and others whose interests are potentially implicated by a proposed sale. Accordingly, consummating the Sale as soon as possible is in the best interests of the Debtor and its creditors.

22. For each of the foregoing reasons, the Debtor, in its business judgment, believes that a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, is in the best interest of the Debtor, its estate, creditors and other parties in interest.

**D. The Court Should Approve the Sale Free and Clear of All Liens, Claims, and Encumbrances Pursuant to Bankruptcy Code Section 363(f)**

23. The Debtor also requests that the Sale Order provide that the sale of the Assets is free and clear of any interest held by any third party in any of the assets to be sold. Specifically, it is contemplated that upon the closing, the successful bidder(s) will take title to and possession of the Assets, free and clear of all liens, claims, interests, and encumbrances.

24. Section 363 of the Bankruptcy Code authorizes the sale of property to be free and clear of interest in such property held by an entity.

25. Liens, including super priority lien held by the DIP Lender Inveniam, will attach to the sales proceeds with the same validity and priority that exists under the DIP Agreement, federal bankruptcy laws, and state law pursuant to section 363(e) of the Bankruptcy Code.

26. The sale of the Assets will satisfy section 363(f) of the Bankruptcy Code because any entities holding liens, claims, interests, or encumbrances against the Assets will have received notice of the Sale. All parties in interest will be given sufficient opportunity to object to the relief requested herein and any such entity that does not object to the Sale of the Purchased Assets should be deemed to have consented. See *Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent.

27. The Debtor also believes that other provisions of section 363(f) of the Bankruptcy Code may be applicable to and would permit the sale of the Assets. Thus, the sale of the Assets is appropriately free and clear of all liens, claims, interests, or encumbrances pursuant to section 363(f) of the Bankruptcy Code.

**E. The Proposed Notice of the Sale is Adequate and Appropriate**

28. Under Bankruptcy Rule 2002(c), notice of the Sale must include the final date, time, and instructions to place a bid to purchase the assets and the sale hearing, and the deadline for filing any objections to the relief requested in this Sale Motion. The Debtor proposes the following deadlines for objecting to the approval of the proposed Sale Transaction: no later than October 22, 2026 (15) days prior to the Sale Hearing (the "<u>Objection Deadline</u>") for all objections to the potential Sale Transaction, the terms contained in this Sale Motion and the proposed Sale Order.

29. Within three (3) business days after entry of the Order approving the bidding procedures, the Debtor will serve the proposed Notice by overnight mail and via e-mail on all parties in interest, all creditors listed on the Debtor's Schedules, all parties who have appeared in the case, and the United States Trustee.

30. As Bankruptcy Rule 2002(c) requires, the Notice will include (among other things) the following: (a) the proposed date, time, and place to submit a bid to purchase the asset(s); (b) information about the Assets; and (c) the Objection Deadline for filing any objections to the relief requested in this Sale Motion. The methods of notice described herein comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed sale of the Assets.

**A Finding That the Sale is in Good Faith**

Debtor further seeks the protections afforded to a purchaser with regard to sale transactions under § 363(m) of the Bankruptcy Code, which provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith.

Although the Bankruptcy Code does not define good faith, courts have recognized that the kind of misconduct that would destroy good faith status involves fraud, collusion between the purchaser and other offerors, or an attempt to take grossly unfair advantage of other offerors. *In re Abbott Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3rd Cir. 1986).

Debtor respectfully submits that the process for which Debtor is seeking approval will ensure that the Debtor and the prospective purchaser have proceeded in good faith. Therefore, this Court should provide to Debtor and any prospective purchaser the protections of § 363(m) of the Bankruptcy Code.

**G. Waiver of Bankruptcy Rules 6004(h) and 6006(d)**

31. The Debtor requests that, upon entry of a Sale Order, the Court waive the 14-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d). The waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) will allow any Sale Transaction to close as soon as possible and prevent further delay in the administration of these cases. In addition, because the Assets impose holding costs on the Debtor during their period of ownership and control, any delay in closing may diminish the Debtor's estate to the detriment of creditors. Thus, the Debtor respectfully submits that a waiver of the 14-day stay requirements contained in Bankruptcy Rules 6004(h) and 6006(d) is appropriate under the circumstances.

**Proposed Order**

A proposed order is submitted with the motion.

**NO PRIOR REQUEST**

32. No prior request for the relief sought in this Sale Motion has been made to this or any other Court in connection with this Chapter 11 Case.

**WHEREFORE**, the Debtor respectfully moves the Court to establish bidding and sale procedures as outlined in the motion, to schedule final deadline to submit bids, to authorize the top two bidders an opportunity to participate in final auction to become the highest bidder, and to approve the Form and Manner of Notice outlined in the motion, and granting further relief to the Debtor as the Court may deem proper.

Dated October 5, 2026 Respectfully Submitted,

STORJ LABS, INC.

By: */s/ Christopher R. Arthur*
Christopher R. Arthur (WVSB #9192)

SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Blvd. E.
Charleston, WV 25301
(304) 720-4090 *(Phone)*
carthur@spilmanlaw.com
***Counsel for Storj, Debtor-in possession***

*and*

*/s/ Gregory D. Ellis*
Gregory D. Ellis
Georgia Bar No. 245310
Lamberth, Cifelli, Ellis & Nason, P.A.
6000 Lake Forrest Drive, N.W., Ste. 290
Atlanta, GA 30328
P: (404) 262-7373, gellis@lcenlaw.com

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In RE:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 26-62642-PWB** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

**CERTIFICATE OF SERVICE**

I, Christopher R. Arthur, hereby certify that on October 5, 2026, I electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system, which will send notice to all parties participating in the same, including the Office of the United States Trustee, Alan Hinderleider.

I further certify that I served the following via regular United States mail to the following:

Kevin P Allen
Duane Morris LLP
625 Liberty Avenue
Suite 1000
Pittsburgh, PA 15222-3112

George A. R. Balchunas
1500 One PPG Place
Pittsburgh, PA 15222

James H. Billingsley
Duane Morris LLP
200 Crescent Court, Suite 900
Dallas, TX 75201

Spencer D. Elliott
Lewis Gianola PLLC
300 Summers Street
P.O. Box 1746
Charleston, WV 25326
Judith K. Fitzgerald
Tucker Arensberg, P.C.
1500 One PPG Place

Ste Rt 22
Pittsburgh, PA 15222

Raymond S. Franks, II.
Carey, Douglas, Kessler & Ruby PLLC
707 Virginia Street, East
Suite 901
Charleston, WV 25301

Mark Harvilla
142 S El Molino Ave., Apt 2
Pasadena, CA 91101

Steven D. Haupt
7127 Warner Rd.
Saline, MI 48176

Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Nikhil Jaion
3016 E. Colorado Blvd. #5216
Pasadena, CA 91107

Jennifer Johnson
146 Osner Dr.
Atlanta, GA 30342

Helen Emmi Karin
5052 N Sandres Rd
Tucson, AZ 85743

Darrly S. Laddin, Esquire
Arnall Golden Gregory LLP
17117th Street NW
Suite 2100
Atlanta, Georgia 30363

Bryan Mangelson
1133 N 1190 E
American Fork, UT 84003

Beverly Weiss Manne
Tucker Arensburg PC
1500 One PPG Place
Pittsburgh, PA 15222

Dominick Marino
15941 E. Sunflower DR.
Fountain Hills, AZ 85268

Lauren Hutchins McCartney
Tucker Arensberg, P.C.
United Center
500 Virginia Street East
Ste 1050
Charleston, WV 25301

Damein Morgan
2896 E Christopher Dr
Fresno, CA 93720

Goran Mrkonjic
Bukereska 14
1100 Beograd
Serbia

Robert L Nistendirk
Woomer, Nistendirk & Associates, PLLC
231 Capitol Street
Ste 400
Charleston, WV 25301

Kimberly Pashel
746 Hillmont Ave.
Decatur, GA 30030

David R. Pogue
Carey Douglas Kessler & Ruby PLLC
707 Virginia Street East, Suite 901
Charleston, WV 25301

Christopher Rocco
610 N. Wagner Rd
Ann Arbor, MI 48103

Martin P. Sheehan Sheehan & Associates, P.L.L.C.

1140 Main St., Ste 333
Wheeling, WV 26003

Donald Shott, Jr.
2568 S Park St.
Salt Lake City, Utah 84106

Andrea Steinke
3063 Quartz Hill Rd
Redding, CA 967003

Maribeth Thomas
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

Matthew Vicari
125 Ocean Pkwy
Apt 3F
Brooklyn, NY 11218

Jeremy Wharton
2767 Woodspring Forest Drive
Kingwood, TX 77345

Trisha Winter
35915 Fredericksburg Rd.
Farmington Hills, MI 48331

*_/s/ Christopher R. Arthur_*
Christopher R. Arthur (WVSB #9192)

And

Gregory D. Ellis
Georgia Bar No. 245310