**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STORJ LABS, INC., | ) | Case No. 26-62642-PWB |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

**OBJECTION OF MICHAEL WARD AND ROBERT LAMB TO DEBTOR'S MOTION TO AUTHORIZE POST-PETITION FINANCING AND USE OF CASH COLLATERAL**

Michael Ward and Robert Lamb (together, the "**Collateral Agents**"), in their capacity as Collateral Agents for certain entities with liens on shares of the Debtor (the "**Pledgees**"), file this *Objection to Debtor's Motion to Authorize Post-Petition Financing and Use of Cash Collateral* [ECF No. 14] (the "**DIP Motion**").

**BACKGROUND**

1. On December 17, 2024, the Pledgees[1] entered into a Stock Purchase Agreement (the "**SPA**") with Inveniam Capital Partners, Inc., ("**Inveniam**"), the parent company and proposed DIP Lender of the Debtor, Storj Labs, Inc. (the "**Debtor**"), whereby the Pledgees agreed to sell their shares of Hedgehog Invest Limited (the "**Shares**") to Inveniam. In partial consideration for the Pledgees' sale of the Shares to Inveniam, on December 17, 2024, Inveniam executed a promissory note (the "**Note**") in favor of the Pledgees in the aggregate principal amount of $9,609,265.57. The balance now exceeds $11,000,000.00.

2. Following certain defaults by Inveniam under the Note, in May 2026, Inveniam and the Collateral Agents, on behalf of the Pledgees, executed (i) a Forbearance Agreement (the

[1] The Pledgees referred to herein include the Collateral Agents, as well as the Adam and Stephanie Howarth Revocable Trust, Bharath Srinivaas Rajagopolan, Four Peaks LLC, Khalid Mohamed Murgian, Leila Govi, Pembroke US Investments LLC, Randolph Investments Ltd, Seedrs Nominees Limited of Stylus Building, Boutique Capital Pty Ltd ATF Tectonic Digital Asset Opportunities Fund, and Watermill Ltd.

"**Forbearance Agreement**"), whereunder the Pledgees agreed to forbear from exercising their rights and remedies under the Note and SPA so long as certain conditions and obligations were satisfied by Iveniam, and (ii) a Security Agreement (the "**Security Agreement**") in favor of the Collateral Agents, for themselves and on behalf of the Pledgees, pursuant to which Inveniam granted the Collateral Agents, on behalf of the Pledgees, a security interest in, *inter alia*, all equity interests in the Debtor and in all assets of the Debtor. Copies of the Forbearance Agreement and Security Agreement are attached hereto as **Exhibit A** and **Exhibit B**, respectively.

3. Specifically, Inveniam (i) pledged to Collateral Agents and granted the Collateral Agents "a senior security interest in all right, title and interests of [Inveniam] and its subsidiaries in and to [all equity interests in, and all assets of, Storj Labs Inc., and its subsidiaries]", (ii) represented to the Pledgees and Collateral Agents that Inveniam "is the direct or indirect owner" of all of the Debtor's assets, and (iii) covenanted not to "create, incur, assume, or permit to exist any lien or encumbrance" on any of the assets of the Debtor. Security Agreement, §§ 2 & 4; Forbearance Agreement, § 8.3(b).

4. Inveniam also represented and warranted that "[n]o consent, approval, authorization, or order of, or filing, registration, or qualification with, any governmental authority or other person is required in connection with the execution, delivery, and performance of this Agreement or the other Loan Documents by the Borrower." Forbearance Agreement, § 5.1(d).

5. Inveniam has defaulted under the Forbearance Agreement by failing to make payments when due under the Forbearance Agreement.

6. On July 26, 2026, the Debtor commenced a chapter 11 bankruptcy case (the "**Bankruptcy Case**") in the Bankruptcy Court for the Northern District of West Virginia.

7. Inveniam is the only equity security holder of the Debtor listed on the Debtor's Corporate Ownership Statement (the "**Corporate Ownership Statement**") attached to the Debtor's *Voluntary Petition for Non-Individuals Filing for Bankruptcy* [ECF No. 1] (the "**Petition**").

8. On August 2, 2026, the Debtor filed the DIP Motion, requesting that the Court, *inter alia*, (i) authorize it to obtain a loan from Inveniam in the total amount of $380,000 (the "**DIP Loan**") by entering into a Debtor-in-Possession Credit Agreement with Inveniam attached to the DIP Motion as Exhibit B (the "**DIP Agreement**"); (ii) grant Inveniam superpriority administrative expense status pursuant to 11 U.S.C. § 364(c)(1) on account of all obligations owing under the DIP Agreement and automatically perfected first priority security interests and liens on all of the Debtor's assets; (iii) deem Inveniam a good faith lender under 11 U.S.C. § 364(e) and grant it the protections provided thereunder; and (iv) authorize the Debtor to use cash collateral pursuant to 11 U.S.C. § 363(c) on the terms and subject to the conditions set forth in the DIP Agreement.

9. Under the DIP Agreement, the Debtor promises "to pay to the order of [Inveniam] the principal amount of the DIP Loan on the Maturity Date, plus all accrued interest, fees, and ***other Obligations then outstanding in full in cash***." DIP Agreement, ¶ 2(c) (emphasis added).

10. The capitalized term "Obligations" is not defined anywhere in the DIP Agreement.

11. The DIP Agreement provides that all "Obligations" under the DIP Agreement, including all of the Debtors' outstanding pre-petition obligations to Inveniam, shall:

> constitute Superpriority DIP Claims over all administrative expense claims and unsecured claims against Storj now existing or hereafter arising, of any kind or nature whatsoever, including all administrative expense claims of the kind specified in Section 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113, 1114 or any other provisions of the Bankruptcy Code and all super-priority administrative expense claims granted to any other Person.

DIP Agreement, ¶ 4(a).

12. The DIP Agreement also grants Inveniam "pursuant to Sections 362, 364(c)(2) and 364(c)(3) of the Bankruptcy Code . . . continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first position post-petition security interests in and Liens on all DIP Collateral" to secure the Debtor's "Obligations" under the DIP Agreement. DIP Agreement, ¶ 5(a).

13. The DIP Agreement also provides:

> In connection with any sale of all or any portion of the DIP Collateral, including pursuant to Section 9-610 or 9-620 of the UCC, at any sale thereof conducted under the provisions of the Bankruptcy Code, including Section 363 of the Bankruptcy Code or as part of a plan of reorganization or liquidation subject to confirmation under Section 1129(b)(2)(A)(iii) of the Bankruptcy Code, or at any sale or foreclosure conducted by DIP Lender, in accordance with applicable Law, **DIP Lender may "credit bid" up to the full amount of all Obligations** in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the DIP Collateral. In connection with the foregoing, DIP Lender shall have the right to assign its right to purchase all or any portion of Storj' assets in connection with any such "credit bid" to a newly-formed acquisition vehicle that is an affiliate of DIP Lender[.]

DIP Agreement, ¶ 4(e) (emphasis added).

14. The DIP Agreement also provides that "Proceeds from Storj selling any assts [sic] shall be credited as follows: 67% applied to Storj's operations, and 33% paid to DIP Lender towards the DIP Financing obligation." DIP Agreement, ¶ 2.

15. The Debtor alleges that it has "sought to obtain financing on a non-priming basis" but has been "unable to do so", that the Debtor "with the support of its advisors engaged in good-faith negotiations and assessed its options for postpetition financing" and that the DIP Agreement "is the product of these negotiations between Debtor and the DIP Lender, both of whom are represented by their own experienced counsel and resulted in Debtor securing the most favorable terms possible under the circumstances." DIP Motion, pp. 7 & 9.

16. The *Declaration of Dr. Sayed Shuja Ali, Vice-President and Chief Restructuring Officer in Support of Storj Labs Inc's ("Storj") Chapter 11 Filing, the Debtor's Emergency Moton to Authorize Post-Petition Financing and Use of Cash Collateral and Schedule a Final Hearing, and Application to Retain and Employ Spilman Thomas & Battle PLLC as Counsel for the [sic] Nunc Pro Tunc to the Petition Date* [ECF No. 14-1] (the "**Declaration**") is attached to the DIP Motion as Exhibit A.

17. Nothing in the Declaration supports the Debtor's allegations that Debtor "sought to obtain financing on a non-priming basis" but has been "unable to do so" and "engaged in good-faith negotiations and assessed its options for postpetition financing", or that the DIP Agreement "is the product of these negotiations between Debtor and the DIP Lender, both of whom are represented by their own experienced counsel and resulted in Debtor securing the most favorable terms possible under the circumstances."

18. The Debtor has not submitted any evidence in support of these allegations.

19. The Debtor also alleges that the terms and conditions of the DIP Agreement were negotiated with Inveniam "at arm's length and in good faith." DIP Motion, p. 12.

20. On the Debtor's Schedule D [ECF No. 63], the Debtor represents that no creditors have claims secured by the Debtor's property.

21. On the Debtor's Amended Schedule E/F [ECF No. 138] ("**Schedule E/F**"), the Debtor represents that Inveniam has an unsecured claim against the Debtor in the amount of $4,037,963.40.

22. Inveniam is the Debtor's parent and there is no evidence that the negotiations were or could be "at arm's length", particularly when Inveniam is listed as an unsecured creditor for

$4,037,963.40 that is not disputed, unliquidated or contingent, but with no explanation of that claim anywhere in the pleadings and documents filed to date.

23. By order dated September 18, 2026 [ECF No. 168], the Bankruptcy Court for the Northern District of West Virginia found that venue in the Northern District of West Virginia was improper and transferred the bankruptcy case to the Bankruptcy Court for the Northern District of Georgia.

## APPLICABLE LAW

24. "If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title; (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or (3) secured by a junior lien on property of the estate that is subject to a lien." 11 U.S.C. § 364(c).

25. "The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal." 11 U.S.C. § 364(e).

26. "After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title , including . . . the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1).

27. "'[C]ross-collateralization' ('[s]ecuring pre-petition debt with pre-and post-petition collateral as part of a post-petition financing arrangement') is not authorized as a financing mechanism under the Bankruptcy Code." *Reynolds v. Servisfirst Bank (In re Stanford)*, 17 F.4th 116, 128 (11th Cir. 2021) (quoting *Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.)*, 963 F.2d 1490, 1491-1492 (11th Cir. 1992)).

28. "The term 'insider' includes . . . if the debtor is a corporation . . . person in control of the Debtor." 11 U.S.C. 101(31).

29. Transactions between a Debtor and an insider are subject to heavy scrutiny. *In re Nilhan Developers, LLC*, 620 B.R. 385, 399 (N.D. Ga. 2020).

## ARGUMENT

**I. To the extent that the term "Obligations" is used in the DIP Agreement to refer to Inveniam's pre-petition unsecured claim against the Debtor, the DIP Motion attempts to impermissibly cross-collateralize the pre-petition unsecured claim.**

30. The capitalized term "Obligations" is not defined anywhere in the DIP Motion or the DIP Agreement.

31. However, the capitalized term "Obligations" is first used in the DIP Agreement where the Debtor promises "to pay to the order of DIP Lender the principal amount of the DIP Loan on the Maturity Date, plus all accrued interest, fees, **and other Obligations then outstanding** in full in cash." DIP Agreement, ¶ 2(c) (emphasis added).

32. The DIP Agreement then provides that "[p]ayments made hereunder shall be credited as follows: first, to interest accrued but unpaid on the DIP Loan until paid in full; second, to the principal balance of the DIP Loan until the same has been paid in full; and finally, to all other Obligations." DIP Agreement, ¶ 2(e).

33. It is unclear what the DIP Agreement means by "other Obligations then outstanding" and "all other Obligations", inasmuch as the principal and interest on the DIP Loan are the only monetary obligations of the Debtor specifically set forth in the DIP Agreement.

34. As such, by the term "Obligations", the DIP Agreement presumably refers to Inveniam's pre-petition unsecured claim against the Debtor in the amount in the amount of $4,037,963.40, as set forth in Schedule E/F (the "**Pre-petition Claim**").[2]

35. Other than any post-petition liens granted to Inveniam, Inveniam has no lien that supports a credit bid, as its Pre-petition Claim is unsecured.

36. The DIP Agreement grants Inveniam "pursuant to Sections 362, 364(c)(2) and 364(c)(3) of the Bankruptcy Code . . . continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected first position post-petition security interests in and Liens on all DIP Collateral" to secure the Debtor's "Obligations." DIP Agreement, ¶ 2(a).

37. The DIP Agreement also grants Inveniam the right to credit bid up to the full amount of the "Obligations" in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the DIP Collateral in any UCC foreclosure, any sale conducted under the provisions of the Bankruptcy Code, or any sale or foreclosure conducted by Inveniam of the Debtor's assets, and to assign such right to credit bid to "a newly-formed acquisition vehicle that is an affiliate of [Inveniam]." DIP Agreement, ¶ 4(e)

38. To the extent that the term "Obligations" refers to the Pre-petition Claim, the DIP Motion requests that the Court grant Inveniam liens to secure pre-petition debt. In other words, the

[2] In the Debtor's request that Inveniam be granted superpriority administrative expense status in the DIP Motion, the Debtor defines "Postpetition Debt" as "all obligations owing [under the DIP Facility] and under, or secured by, the DIP Documents . . . including all 'Obligations' as described in the [DIP Agreement][.]" DIP Motion, p. 4. As it is unclear from the DIP Agreement what the term "Obligations" is intended to describe apart from the Inveniam's prepetition unsecured claim, the Debtor is presumably attempting to include the Pre-petition Claim in its definition of "Postpetition Debt".

DIP Motion asks the Court to cross-collateralize the unsecured Pre-petition Claim with the DIP loan.

39. Cross-collateralization "is not authorized as a financing mechanism under the Bankruptcy Code" and is "'directly contrary to the fundamental priority scheme of the Bankruptcy Code.'" *Reynolds v. Servisfirst Bank (In re Stanford)*, 17 F.4th 116, 128 (11th Cir. 2021) (quoting *Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.)*, 963 F.2d 1490, 1491-1492 (11th Cir. 1992)).

40. Accordingly, to the extent that the term "Obligations" refers to the Pre-petition Claim in the DIP Agreement and DIP Motion, the Debtor improperly asks the Court to change a totally unsecured claim into a superpriority secured claim.

**II. The DIP Agreement Constitutes a Sub Rosa Plan.**

41. The DIP Agreement also provides that "Proceeds from Storj selling any assts [sic] shall be credited as follows: 67% applied to Storj's operations, and 33% paid to DIP Lender towards the DIP Financing obligation." DIP Agreement, ¶ 2.

42. As discussed above, the DIP agreement also provides for the cross-collateralization of the Pre-petition Claim.

43. "DIP financings sometimes trigger *sub rosa* plan issues. '[A] bankruptcy court cannot, under the guise of section 364, approve financing arrangements that amount to a plan of reorganization but evade confirmation requirements.' . . . To put a finer point on it, '[w]hile certain favorable terms [under a financing agreement] may be permitted as a reasonable exercise of the debtor's business judgment, bankruptcy courts do not allow terms in financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender. . .' . . . The touchstone consideration in conducting

that analysis is 'whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest[.]'" *In re LATAM Airline Grp., S.A.*, 620 B.R. 722, 815-16 (S.D.N.Y. 2020) (quoting *Resolution Tr. Corp. v. Official Unsecured Creditors Comm. (In re Def. Drug Stores, Inc.)*, 145 B.R. 312, 317 (9th Cir. BAP 1992).

44. By pre-determining in a DIP proceeding how the proceeds of *any* sale of Debtor's assets are to be distributed, the DIP Agreement prejudices the rights of other creditors under the priority scheme set forth under 11 U.S.C. § 507(a) and the absolute priority rule set forth under 11 U.S.C. § 1129(b)(2)(B).

45. Further, by cross-collateralizing Inveniam's unsecured Pre-petition Claim, the DIP Agreement confers unwarranted benefits upon Inveniam which are not supported by equivalent value and turns a wholly unsecured claim of an insider into one that would be paid ahead of all other unsecured claims.

46. Because the DIP Agreement subverts the priority scheme set forth under 11 U.S.C. § 507(a) and the absolute priority rule set forth under 11 U.S.C. § 1129(b)(2)(B) and confers unwarranted benefits upon Inveniam, the DIP Agreement constitutes a *sub rosa* plan, and the DIP Motion should be denied.

## III. The Debtor has not provided any evidence that it sought alternative financing on more favorable terms than those set out in the DIP Agreement.

47. Under 11 U.S.C. § 364(c), a bankruptcy court may only authorize superpriority status for a post-petition lender or a grant of a post-petition liens "[i]f the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense[.]"

48. Indeed, for a post-petition lender to be granted liens or superpriority status pursuant to 11 U.S.C. § 364(c), a debtor-in-possession is required to prove that no alternative financing on more favorable terms than those requested. *In re Phase-I Molecular Toxicology*, 285 B.R. 494, 495 (Bankr. D.N.M. 2002) ("In order to secure approval of post-petition financing pursuant to 11 U.S.C. §§ 364(c) and/ or (d), the debtor-in-possession bears the burden of proving the following: 'first, that the proposed financing is an exercise of sound and reasonable business judgment; second, that no alternative financing is available on any other basis; third, that the financing is in the best interests of the estate and its creditors; and, as a corollary to the first three points, that no better offers, bids, or timely proposals are before the Court.'") (quoting *In re Western Pacific Airlines, Inc.*, 223 B.R. 567, 572 (Bankr. D. Colo. 1997)); *In re SPAC Recovery Co.*, 676 B.R. 260, 269 (Bankr. S.D.N.Y 2026) ("The debtor bears the burden of demonstrating that alternative credit is unavailable.").

49. The Debtor has submitted no evidence that it sought post-petition financing from any other lender besides Inveniam, much less that the terms set forth in the DIP Agreement are the most favorable terms for post-petition financing available.

50. Indeed, the Debtor's allegations to this effect do not even make rudimentary sense and suggest that the Debtor has not sought post-petition financing from any other lender besides Inveniam. The Debtor alleges that it has "sought to obtain financing on a non-priming basis" but has been "unable to do so." But the DIP Agreement does not include a priming lien, and if the Debtor's schedules are accurate, there are no pre-petition secured claims against the Debtor to prime.

51. At most, the Debtor alleges that "with the support of its advisors" it "assessed its options for postpetition financing." But this could mean as little as "the Debtor had a meeting with

some consultants who told it that it would be difficult to obtain post-petition financing on favorable terms."

52. Because the Debtor has submitted no evidence that it has made a good faith effort to seek alternative financing on terms more favorable than the terms set forth in the DIP Agreement, the Debtor's request that the Court grant Inveniam post-petition liens or superpriority status under 11 U.S.C. § 364(c) is improper and should be denied in a final DIP order.

**IV. Inveniam is not a "Good Faither Lender" and therefore should not be granted the protections set forth under Section 364(e) of the Bankruptcy Code.**

53. The Debtors request that the court find that Inveniam "are [sic] 'good faith' lenders [sic] within the meaning of section 364(e) of the Bankruptcy Code and are [sic] entitled to all of the protections that section affords." DIP Motion, p. 14.

54. The DIP Agreement the Debtor negotiated with Inveniam attempts to impermissibly cross-collateralize Inveniam's pre-petition unsecured obligations, prejudices the rights of other creditors under the priority scheme set forth under 11 U.S.C. § 507(a) and the absolute priority rule set forth under 11 U.S.C. § 1129(b)(2)(B) by attempting to govern the distribution of proceeds of any sale of Debtor's assets, and confers unwarranted benefits upon Inveniam.

55. Moreover, the grant of liens requested in the DIP Motion violates a negative covenant set forth in Inveniam's Forbearance Agreement with the Pledgees which provides that Inveniam shall not "create, incur, assume, or permit to exist any lien or encumbrance" on any of the assets of the Debtor.

56. "Generally, courts do not define what is good faith but rather, what is not. . . . Specifically, courts will not find good faith where there is fraud, collusion, actions for an improper

purpose, or knowledge of illegality of the transaction." *In re LATAM Airline Grp., S.A.*, 620 B.R. 722, 792 (S.D.N.Y. 2020).

57. By seeking to cross-collateralize its Pre-petition Claim, prejudice the rights of other creditors and undermine the provisions of the Bankruptcy Code, and violate the terms of its own agreement with the Pledgees, Inveniam negotiated the DIP Agreement in bad faith.

58. Moreover, the Debtor's claim that the DIP Agreement was negotiated "at arm's length" with Inveniam is facially absurd. Inveniam is the sole owner of the Debtor; a parent company's negotiations with its wholly owned subsidiary are not negotiations at "arm's length."

59. Accordingly, the Court should not grant Inveniam the protections afforded under Section 364(e) of the Bankruptcy Code.

## CONCLUSION

For the foregoing reasons, the DIP Motion should be denied in its entirety. However, should the Court grant the DIP Motion in part, it should not: (i) allow Inveniam to cross-collateralize its Pre-petition Claim; (ii) allow the DIP Agreement to govern the distribution of the proceeds of any sale of the Debtor's assets; (iii) grant Inveniam liens or superpriority status pursuant to 11 U.S.C. § 364(c); (iv) allow Inveniam to credit bid on the Debtor's assets or to assign any rights to do so to an acquisition vehicle; or (v) grant Inveniam the protections of 11 U.S.C. § 364(e).

WHEREFORE, the Collateral Agents respectfully request that the Court deny the DIP Motion in its entirety, or, alternatively, if the Court enters an order granting the DIP Motion, clarify that such order shall not (i) allow Inveniam to cross-collateralize its Pre-petition Claim; (ii) allow the DIP Agreement to govern the distribution of the proceeds of any sale of the Debtor's assets; (iii) grant Inveniam post-petition liens or superpriority status pursuant to 11 U.S.C. § 364(c); (iv) allow Inveniam to credit bid on the Debtor's assets or to assign any rights to do so to an acquisition vehicle; or (v) grant Inveniam the protections of 11 U.S.C. § 364(e).

Respectfully submitted,

Dated: October 22, 2026

TUCKER ARENSBERG, P.C.

*/s/ Judith K. Fitzgerald*

Judith K. Fitzgerald, Esq. (PA ID No. 18110)
*Admitted pro hac vice*
Beverly Weiss Manne, Esq. (PA ID No. 34545)
*Admitted pro hac vice*
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
jfitzgerald@tuckerlaw.com
bmanne@tuckerlaw.com

\- and -

ARNALL GOLDEN GREGORY LLP
Darryl S. Laddin, Esq.
Georgia Bar No. 460793
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363-1031
Telephone: (404) 873-8120

*Counsel for Michael Ward and Robert Lamb, in their capacity as Collateral Agents for the Pledgees*

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| STORJ LABS, INC., | ) | Case No. 26-62642-PWB |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that that on October 22, 2026, a true and correct copy of the foregoing *Objection to Debtor's Motion to Authorize Post-Petition Financing and Use of Cash Collateral* filed by Michael Ward and Robert Lamb, in their capacity as Collateral Agents for certain entities with liens on shares of the Debtor, was served on all parties requesting electronic notice via the Court's CM/ECF system.

*/s/ Judith K. Fitzgerald*
Judith K. Fitzgerald, Esq.