**Execution Version**

# SECURITY AGREEMENT

This Security Agreement (as amended, modified or otherwise supplemented from time to time, this "**Security Agreement**"), dated as of May 11, 2026, is executed by **Inveniam Capital Partners, Inc.**, a Delaware corporation having an address at 39500 High Pointe Drive Suite 200, Novi MI 48375 (together with its successors and assigns, "**Borrower**"), for itself and on behalf of its subsidiaries, in favor of **Collateral Agent** (as herein defined), for itself and on behalf of the former shareholders of Hedgehog Invest Limited, a limited company existing under the laws of England and Wales, in their capacities as lenders under the Note (as defined below) (individually, a "**Lender**" and collectively, the "**Lenders**").

## RECITALS

A. Borrower and Lenders are party to that certain Share Purchase Agreement, dated as of December 17, 2024 (the "**Purchase Agreement**"), pursuant to which, among other matters, Borrower issued a promissory note, dated as of even date therewith (as amended, modified, restated or otherwise supplemented from time to time, the "**Note**") in an aggregate principal amount of $9,609,265.57 (as the same may be adjusted pursuant to the terms of the Note), in favor of the Lenders.

B. Borrower is now in default under the Note and has requested that the Lenders forbear from exercising their rights and remedies with respect thereto.

C. In order to induce each Lender to so forbear from exercising such rights and remedies, and in consideration of each Lender's willingness to be bound by that certain Forbearance Agreement memorializing the same, to be entered into on the date hereof (the "**Forbearance Agreement**"), by and among Borrower, the Collateral Agent (for and on behalf of the Lenders), and the other parties thereto, Borrower has agreed to enter into this Security Agreement and to grant Collateral Agent, for the benefit thereof and of the Lenders, the security interest in the Collateral described below. In the event of a conflict between this Agreement and the Forbearance Agreement, the Forbearance Agreement shall govern.

## AGREEMENT

NOW, THEREFORE, in consideration of the above recitals and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Borrower, acting for itself and on behalf of its subsidiaries, hereby agrees with Collateral Agent and the Lenders as follows:

1. Definitions and Interpretation. When used in this Security Agreement, the following terms have the following respective meanings:

"**Collateral**" has the meaning given to that term in Section 2 hereof.

"**Loan Documents**" means the Note, the Forbearance Agreement, and this Security Agreement, and all other agreements, contracts, undertakings, instruments, certificates, and other documents referenced therein or contemplated thereby.

"**Obligations**" means all loans, advances, debts, liabilities and obligations, howsoever arising, owed by Borrower to any of Collateral Agent and the Lenders of every kind and description (whether or not evidenced by any note or instrument and whether or not for the payment of money), now existing or hereafter arising under or pursuant to the terms of the Loan Documents, including, all interest, fees, charges, expenses,

attorneys' fees and costs and accountants' fees and costs chargeable to and payable by Borrower hereunder and thereunder, in each case, whether direct or indirect, absolute or contingent, due or to become due, and whether or not arising after the commencement of a proceeding under Title 11 of the United States Code (11 U.S.C. Section 101 et seq.), as amended from time to time (including post-petition interest) and whether or not allowed or allowable as a claim in any such proceeding.

"**UCC**" means the Uniform Commercial Code as in effect in the State of Delaware from time to time.

All capitalized terms not otherwise defined herein shall have the respective meanings given in the Forbearance Agreement. Unless otherwise defined herein, all terms defined in the UCC have the respective meanings given to those terms in the UCC.

2. Grant of Security Interest. As security for the Obligations, Borrower hereby pledges to Collateral Agent and grants to Collateral Agent a senior security interest in all right, title and interests of Borrower and its subsidiaries in and to the property described in Attachment 1 hereto, whether now existing or hereafter from time to time acquired (collectively, the "**Collateral**"). In the event that, during the term of this Agreement, any dividend, reclassification, recapitalization, readjustment or other change is declared or made in the capital structure of any issuer of capital stock, limited liability company membership interests, partnership interests, or other equity interests included in the Collateral, then Collateral Agent shall have a security interest in all securities issued to or acquired by Borrower or any of its affiliates by reason of such event, and such securities shall become part of the Collateral

3. Delivery of Collateral Securities. All certificates or instruments, if any, representing or evidencing the capital stock, limited liability company membership interests, partnership interests, or other equity interests included in the Collateral (the "**Collateral Securities**") shall be delivered to and held by or on behalf of the Collateral Agent and shall be in suitable form for transfer by delivery, or shall be accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance satisfactory to the Collateral Agent. In addition, the Collateral Agent shall have the right at any time to exchange certificates or instruments representing or evidencing Collateral Securities for certificates or instruments of smaller or larger denominations. Borrower hereby agrees that Collateral Agent may take any action, and Borrower will take any action specified by Collateral Agent, to cause Collateral Agent to have a first priority lien on, and security interest, the Collateral Securities. Borrower irrevocably authorizes and instructs each issuer of Collateral Securities to comply with any instruction received by such issuer from Collateral Agent with respect to such Collateral Securities, and Borrower agrees that each such issuer shall be fully protected in so complying; provided, however, that Collateral Agent agrees that Collateral Agent will not issue or deliver any such instructions to any such issuer except upon or after the occurrence of a Forbearance Event of Default.

4. General Representations and Warranties. Borrower represents and warrants to Collateral Agent and the Lenders that (a) Borrower is the direct or indirect owner of the Collateral (or, in the case of after-acquired Collateral, at the time Borrower acquires rights in the Collateral, will be the owner thereof) and that no other Person has (or, in the case of after-acquired Collateral, at the time Borrower directly or indirectly acquires rights therein, will have) any right, title, claim or interest (by way of Lien or otherwise) in, against or to the Collateral, other than Permitted Liens; (b) upon the filing of UCC-1 financing statements in the appropriate filing offices, Collateral Agent has (or in the case of after-acquired Collateral, at the time Borrower directly or indirectly acquires rights therein, will have) a perfected senior security interest in the Collateral to the extent that a security interest in the Collateral can be perfected by such filing, except for Permitted Liens; (c) all accounts receivable and payment intangibles are genuine and enforceable against the party obligated to

pay the same; (e) the originals of all documents evidencing all direct and indirect accounts receivable and payment intangibles of Borrower and the only original books of account and records of Borrower relating thereto are, and will continue to be, kept at the address of the Borrower set forth in clause 9 of the Purchase Agreement; (f) all of the Collateral Securities have been duly and validly issued, are fully paid and nonassessable, and are owned directly or indirectly by Borrower free of any security interests or liens except for the Collateral Agent's security interest hereunder; and (g) Borrower has the right to vote, pledge and grant a security interest in or otherwise transfer its direct or indirect portion of the Collateral Securities without the consent of any other person and free of any security interests or liens, and without any restriction by Borrower or any issuer of Collateral Securities or any agreement among such issuer's shareholders, partners or members.

5. Covenants Relating to Collateral. Borrower hereby agrees at the Borrower's cost and expense (a) to perform all acts that may be necessary to maintain, preserve, protect and perfect the Collateral, the Lien granted to Collateral Agent therein and the perfection and priority of such Lien, except for Permitted Liens; (b) not to use or permit any Collateral to be used (i) in violation in any material respect of any applicable law, rule or regulation, or (ii) in violation of any policy of insurance covering the Collateral; (c) to pay promptly when due all taxes and other governmental charges, all Liens and all other charges now or hereafter imposed upon or affecting any Collateral; (d) without 30 days' written notice to Collateral Agent, (i) not to change Borrower's name or place of business (or, if Borrower has more than one place of business, its chief executive office), or the office in which Borrower's records relating to accounts receivable and payment intangibles are kept, or (ii) not to change Borrower's state of incorporation; and (e) to procure, execute and deliver from time to time any endorsements, assignments, financing statements and other writings reasonably deemed necessary or appropriate by Collateral Agent to perfect, maintain and protect its Lien hereunder and the priority thereof and to deliver promptly upon the request of Collateral Agent all originals of Collateral consisting of instruments.

6. Authorized Action by Collateral Agent. Borrower hereby irrevocably appoints Collateral Agent as its and its subsidiaries' attorney-in-fact (which appointment is coupled with an interest) and agrees that Collateral Agent may perform (but Collateral Agent shall not be obligated to and shall incur no liability to Borrower or any third party for failure so to do) any act which Borrower is obligated by this Security Agreement to perform, and to exercise such rights and powers as Borrower or its subsidiaries might exercise with respect to the Collateral, including the right to (a) collect by legal proceedings or otherwise and endorse, receive and receipt for all dividends, interest, payments, proceeds and other sums and property now or hereafter payable on or on account of the Collateral; (b) enter into any extension, reorganization, deposit, merger, consolidation or other agreement pertaining to, or deposit, surrender, accept, hold or apply other property in exchange for the Collateral; (c) make any compromise or settlement, and take any action it deems advisable, with respect to the Collateral; (d) insure, process and preserve the Collateral; (e) pay any indebtedness of Borrower or its subsidiaries relating to the Collateral; and (f) file UCC financing statements and execute other documents, instruments and agreements required hereunder; provided, however, that Collateral Agent shall not exercise any such powers granted pursuant to subsections (a) through (e) prior to the occurrence of a Forbearance Event of Default and shall only exercise such powers during the continuance of a Forbearance Event of Default. Borrower agrees to reimburse Collateral Agent upon demand for any reasonable costs and expenses, including attorneys' fees, Collateral Agent may incur while acting as Borrower's or its subsidiaries' attorney-in-fact hereunder, all of which costs and expenses are included in the Obligations. It is further agreed and understood between the parties hereto that such care as Collateral Agent gives to the safekeeping of its own property of like kind shall constitute reasonable care of the Collateral when in Collateral Agent's possession; provided, however, that Collateral Agent shall not be required to make any presentment, demand or protest, or give any notice and need not take any action to preserve any rights against any prior party or any other person in connection with the Obligations or with respect to the Collateral.

7. Default and Remedies.

(a) Default. Borrower shall be deemed in default under this Security Agreement upon the occurrence and during the continuance of a Forbearance Event of Default.

(b) Remedies Generally. Upon the occurrence and during the continuance of a Forbearance Event of Default, the Collateral Agent shall have the right to exercise all of the remedies conferred hereunder, and the Collateral Agent shall have all the rights and remedies of a secured party under the UCC. Without limitation, the Collateral Agent shall have the following rights and powers, in each case:

(i) immediately upon a Forbearance Event of Default, Borrower hereby irrevocably for itself and on behalf of its subsidiaries conveys, transfers, and assigns to Collateral Agent, and Collateral Agent hereby accepts, all of Borrower's and its subsidiaries' right, title, and interest in the Collateral;

(ii) the Collateral Agent shall have the right to take possession of the Collateral and, for that purpose, enter, with the aid and assistance of any person, any premises where the Collateral, or any part thereof, is or may be placed and remove the same, and the Borrower shall assemble the Collateral and make it available to the Collateral Agent at places which the Collateral Agent shall reasonably select, whether at such Borrower's premises or elsewhere, and make available to the Collateral Agent, without rent, all of the Borrower's respective premises and facilities for the purpose of the Collateral Agent's taking possession of, removing or putting the Collateral in saleable or disposable form;

(iii) the Collateral Agent shall have the right to sell, lease or otherwise dispose of and deliver all or any part of the Collateral, at public or private sale or otherwise, either with or without special conditions or stipulations, for cash or on credit or for future delivery, in such parcel or parcels and at such time or times and at such place or places, and upon such terms and conditions as the Collateral Agent may determine without further notice to the Borrower;

To the extent permitted under applicable law, the Borrower waives any and all rights that it or its subsidiaries may have to a judicial hearing in advance of the enforcement of any of the Collateral Agent's rights and remedies hereunder, including, without limitation, its right following a Forbearance Event of Default to take immediate possession of the Collateral and to exercise its rights and remedies with respect thereto.

(c) Remedies Specific to Collateral Securities. If any Forbearance Event of Default shall have occurred and be continuing, all rights of the Borrower and its subsidiaries to (i) exercise the voting and other consensual rights it would otherwise be entitled to exercise in respect of the Collateral Securities, and (ii) receive the dividends and other distributions which it would otherwise be entitled to receive and retain in respect of the Collateral Securities, shall immediately cease, and all such rights shall thereupon become vested in the Collateral Agent, which shall have the sole right to exercise such voting and other consensual rights and receive and hold such dividends and other distributions as Collateral. In connection with the foregoing, Borrower for itself and on behalf of its subsidiaries hereby grants to Collateral Agent, effective during the existence of a Forbearance Event of Default, an **IRREVOCABLE PROXY** pursuant to which Collateral Agent shall, as if Collateral Agent were a direct holder of the Collateral Securities, be entitled (but shall not be obligated) to exercise all voting powers pertaining to the Collateral Securities, including to call and attend all meetings of the shareholders, members or partners of the issuer(s) of the Collateral Securities to be held from time to time with full power to act and vote in the name, place and stead of Borrower and its subsidiaries, give consents, waivers and ratifications in respect of the Collateral Securities and otherwise act with respect thereto as though it were the outright beneficial owner and record holder thereof, and any and all proxies theretofore executed by

such Borrower and its subsidiaries shall terminate and thereafter be null and void and of no effect whatsoever. If a Forbearance Event of Default occurs and is continuing, the Collateral Agent shall further have the right, at any time in its discretion and without notice to the Borrower or any of its subsidiaries, to transfer to or to register in the name of the Collateral Agent or any of its nominees any or all of the Collateral Securities. The foregoing remedies in respect of the Collateral Securities are in addition to, and are not in lieu of, the general remedies available to the Collateral Agent in respect of the Collateral set forth elsewhere in this Security Agreement.

(d) Compliance with Securities Laws. The parties agree that in any foreclosure sale of the Collateral, the Collateral Agent may restrict the bidders to those who will represent that they are purchasing for investment only and not with a view to distribution, and who are "accredited investors" (as defined in Regulation D of the Securities Act of 1933). The Borrower agrees for itself and on behalf of its subsidiaries that a sale so conducted shall be deemed to be "commercially reasonable" under the UCC, provided that the Collateral could not be publicly offered at that time.

(e) Application of Collateral Proceeds. The proceeds of any such sale, lease or other disposition of the Collateral hereunder or from payments made on account of any insurance policy insuring any portion of the Collateral shall (i) first be applied to all costs, fees and expenses paid or incurred by the Collateral Agent or the Lenders in connection with the exercise, protection or enforcement of the rights and remedies of the Collateral Agent and the Lenders hereunder, (ii) second in satisfaction of the Obligations, and to the payment of any other amounts required by applicable law, and (iii) third, the excess, if any shall be paid to the Borrower or whomever is legally entitled to receive the same. In the event that a Lender receives payments or distributions in excess of its pro rata interest in the Note (determined in accordance with the Lenders' respective percentage interests set forth on Schedule 1 to the Note), then such Lender shall hold in trust all such excess payments or distributions for the benefit of the other Lenders and shall pay such amounts held in trust to such other Lenders upon demand by such Lenders.

8. Collateral Agent.

(a) Appointment. The Lenders hereby appoint each of Michael Ward and Robert Lamb (and any replacement "Sellers' Representatives" appointed by the Lenders pursuant to the Purchase Agreement) as collateral agent for the Lenders under this Security Agreement (the foregoing appointees, acting individually or collectively in such capacity, the "**Collateral Agent**") to serve from the date hereof until the termination of the Security Agreement.

(b) Powers and Duties of Collateral Agent, Indemnity by Lenders.

(i) Each Lender hereby irrevocably authorizes the Collateral Agent to take such action and to exercise such powers hereunder as provided herein or as requested in writing by those Lenders holding a majority in interest in the Note (determined in accordance with the Lenders' respective percentage interests set forth on Schedule 1 to the Note) in accordance with the terms hereof, together with such powers as are reasonably incidental thereto. Collateral Agent may execute any of its duties hereunder by or through agents or employees and shall be entitled to request and act in reliance upon the advise of counsel concerning all matters pertaining to its duties hereunder and shall not be liable for any action taken or omitted to be taken by it in good faith in accordance therewith.

(ii) Neither the Collateral Agent nor any of its directors, officers or employees shall be liable or responsible to any Lender or to Borrower for any action taken or omitted to be taken by Collateral Agent or any other such person hereunder or under any related agreement, instrument or document,

except in the case of gross negligence or willful misconduct on the part of the Collateral Agent, nor shall the Collateral Agent or any of its directors, officers or employees be liable or responsible for (i) the validity, effectiveness, sufficiency, enforceability or enforcement of the Note, this Security Agreement or any instrument or document delivered hereunder or relating hereto; (ii) the title of Borrower to any of the Collateral or the freedom of any of the Collateral from any prior or other liens or security interests; (iii) the determination, verification or enforcement of Borrower's compliance with any of the terms and conditions of this Security Agreement; (iv) the failure by Borrower to deliver any instrument or document required to be delivered pursuant to the terms hereof; or (v) the receipt, disbursement, waiver, extension or other handling of payments or proceeds made or received with respect to the collateral, the servicing of the Collateral or the enforcement or the collection of any amounts owing with respect to the Collateral.

(iii) In the case of this Security Agreement and the transactions contemplated hereby and any related document relating to any of the Collateral, each of the Lenders agrees to pay to the Collateral Agent, on demand, its pro rata share (determined in accordance with the Lenders' respective percentage interests set forth on Schedule 1 to the Note) of all fees and all expenses incurred in connection with the operation and enforcement of this Security Agreement, the Note or any related agreement to the extent that such fees or expenses have not been paid by Borrower. In the case of this Security Agreement and each instrument and document relating to any of the Collateral, each of the Lenders and the Borrower hereby agrees to hold the Collateral Agent harmless, and to indemnify the Collateral Agent from and against any and all loss, damage, expense or liability which may be incurred by the Collateral Agent under this Security Agreement and the transactions contemplated hereby and any related agreement or other instrument or document, as the case may be, unless such liability shall be caused by the willful misconduct or gross negligence of the Collateral Agent.

9. Miscellaneous.

(a) Notices. Except as otherwise provided herein, all notices, requests, demands, consents, instructions or other communications to or upon Borrower or Collateral Agent under this Security Agreement shall be made and become effective pursuant to the terms of clause 9 of the Purchase Agreement.

(b) Termination of Security Interest. Upon the payment in full of all Obligations, the security interest granted herein shall terminate and all rights to the Collateral shall revert to Borrower. Upon such termination Collateral Agent hereby authorizes Borrower to file any UCC termination statements necessary to effect such termination and Collateral Agent will execute and deliver to Borrower any additional documents or instruments as Borrower shall reasonably request to evidence such termination.

(c) Nonwaiver. No failure or delay on Collateral Agent's part in exercising any right hereunder shall operate as a waiver thereof or of any other right nor shall any single or partial exercise of any such right preclude any other further exercise thereof or of any other right.

(d) Amendments and Waivers. This Security Agreement may not be amended or modified, nor may any of its terms be waived, except by written instruments signed by Borrower and Collateral Agent. Each waiver or consent under any provision hereof shall be effective only in the specific instances for the purpose for which given.

(e) Assignments. This Security Agreement shall be binding upon and inure to the benefit of Collateral Agent and Borrower and their respective successors and assigns; provided, however, that Borrower

may not sell, assign or delegate rights and obligations hereunder without the prior written consent of Collateral Agent.

(f) Cumulative Rights, etc. The rights, powers and remedies of Collateral Agent under this Security Agreement shall be in addition to all rights, powers and remedies given to Collateral Agent by virtue of any applicable law, rule or regulation of any governmental authority, any Transaction Document or any other agreement, all of which rights, powers, and remedies shall be cumulative and may be exercised successively or concurrently without impairing Collateral Agent's rights hereunder. Borrower waives any right to require Collateral Agent to proceed against any person or entity or to exhaust any Collateral or to pursue any remedy in Collateral Agent's power. The Borrower acknowledges that a breach or threatened breach of the Borrower's or its subsidiaries' obligations under this Agreement would give rise to irreparable harm to the Collateral Agent and the Lenders, for which monetary damages may not be an adequate remedy. The Borrower therefore hereby agrees that, in the event of a breach or a threatened breach by the Borrower or its subsidiaries of any such obligations, the Collateral Agent and the Lenders shall, in addition to any and all other rights and remedies that may be available in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

(g) Payments Free of Taxes, Etc. All payments made by Borrower hereunder or under the Note shall be made by Borrower free and clear of and without deduction for any and all present and future taxes, levies, charges, deductions and withholdings. In addition, Borrower shall pay upon demand any stamp or other taxes, levies or charges of any jurisdiction with respect to the execution, delivery, registration, performance and enforcement of this Security Agreement. Upon request by Collateral Agent, Borrower shall furnish evidence satisfactory to Collateral Agent that all requisite authorizations and approvals by, and notices to and filings with, governmental authorities and regulatory bodies have been obtained and made and that all requisite taxes, levies and charges have been paid.

(h) Partial Invalidity. If at any time any provision of this Security Agreement is or becomes illegal, invalid or unenforceable in any respect under the law or any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Security Agreement nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby.

(i) Construction. This Security Agreement is the result of negotiations among, and has been reviewed by, Borrower, Lenders, Collateral Agent and their respective counsel. Accordingly, this Security Agreement and the other Transaction Documents shall be deemed to be the product of all parties hereto, and no ambiguity shall be construed in favor of or against Borrower, Lenders or Collateral Agent.

(j) Entire Agreement. This Security Agreement taken together with Note, the Purchase Agreement and the other Transaction Documents constitute and contain the entire agreement of Borrower, Lenders and Collateral Agent, and supersede any and all prior agreements, negotiations, correspondence, understandings and communications among the parties (whether written or oral), respecting the subject matter hereof.

(k) Other Interpretive Provisions. References in this Security Agreement to any document, instrument or agreement (a) includes all exhibits, schedules and other attachments thereto, (b) includes all documents, instruments or agreements issued or executed in replacement thereof, and (c) means such document, instrument or agreement, or replacement or predecessor thereto, as amended, modified and supplemented from time to time and in effect at any given time. The words "hereof," "herein" and "hereunder" and words of similar

import when used in this Security Agreement refer to this Security Agreement as a whole and not to any particular provision of this Security Agreement. The words "include" and "including" and words of similar import when used in this Security Agreement shall not be construed to be limiting or exclusive.

(l) Governing Law. This Security Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without reference to conflicts of law rules (except to the extent governed by the UCC).

(m) Counterparts. This Security Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall be deemed to constitute one instrument.

(*The remainder of this page is intentionally left blank*)

IN WITNESS WHEREOF, the Borrower, Collateral Agent and the Lenders have caused this Security Agreement to be executed as of the day and year first above written.

**BORROWER**:

**Inveniam Capital Partners, Inc.**

Robert M. Yablunsky
Robert Yablunsky (2026-05-12 15:40:05 EDT)

By: ______________________

Name: Robert Yablunsky

Its: EVP

**COLLATERAL AGENT:**

Michael Ward
Michael Ward (2026-05-12 21:45:42 GMT+1)

Michael Ward

Rob Lamb
Rob Lamb (2026-05-12 21:20:40 GMT+1)

Robert Lamb

**LENDERS**:

Michael Ward
Michael Ward (2026-05-12 21:45:42 GMT+1)

Michael Ward, in his capacity as Sellers' Representative for and on behalf of the Lenders

Rob Lamb
Rob Lamb (2026-05-12 21:20:40 GMT+1)

Robert Lamb, in his capacity as Sellers' Representative for and on behalf of the Lenders

(*Signature page to Security Agreement*)

**ATTACHMENT 1**

**TO SECURITY AGREEMENT**

The Collateral shall consist of the following assets of the Borrower and its subsidiaries, and all proceeds therefrom:

| **Asset** | **Description** |
|---|---|
| Storj Labs Inc. | All equity interests in, and all assets of, Storj Labs Inc., and its subsidiaries |
| Swarm Capital GMBH (Liechtenstein), Swarm Markets GMBH (Germany), and Swarmx GMBH (Germany) (collectively, the "Swarm Entities") | All equity interests in, and all assets of, the Swarm Entities and their respective subsidiaries[1] |
| Rialto Trading Holdings, LLC | All equity interests in, and all assets of, Rialto Trading Holdings, LLC, and its subsidiaries |
| MANTRA $OM tokens | All Mantra or $OM Tokens that were received or may be received in the future by Borrower or any other member of Buyer's Group pursuant to the terms of (1) the Milestone Token Grant Agreement by and between MANTRA Chain Association and an affiliate of Borrower dated as of October 31, 2025 and (2) the NVNM Cooperation Agreement between MANTRA Group Holdings Limited and Borrower dated December 23, 2025, which $OM Tokens may be subject to lockup restrictions |

[1] Lenders acknowledge that an Inveniam subsdiary and the Swarm Entities are currently in discussions to unwind the transaction.