**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In RE:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 26-62642-PWB** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

**DEBTOR'S REPLY IN SUPPORT OF MOTION TO AUTHORIZE POST-PETITION FINANCING AND USE OF CASH COLLATERAL, AND DEBTOR'S EXPEDITED MOTION FOR ENTRY OF AN ORDER (A) ESTABLISHING BIDDING AND SALES PROCEDURES, (B) SCHEDULING FINAL DEADLINES TO SUBMIT BIDS, AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

Storj Labs Inc., the debtor and debtor-in-possession herein ("Debtor"), submits this Reply to the Objection of Michael Ward and Robert Lamb in their capacities as collateral agents for certain former Hedgehog Invest Limited shareholders [Doc. Nos. 196 and 197] ("Objectors"), regarding Debtor's (I) Motion to Authorize Post-Petition Financing and Use of Cash Collateral [Doc No. 14] ("DIP Motion"); (II) Debtor's Expedited Motion for Entry of an Order (a) Establishing Bidding and Sale Procedures, (B) Scheduling Final Deadline to Submit Bids, and (C) Approving the Form and Manner of Notice Thereof [Doc. No. 189] ("Sale Motion").

## INTRODUCTION

The Debtor's property is separate from the property of its parent and equity holder. Thus, even if the Objectors hold a valid pledge of Inveniam's equity interests in the Debtor, that pledge does not make the Objectors secured creditors of the Debtor's assets. Objectors' alleged rights arise from Inveniam's note, forbearance agreement, and security agreement. Inveniam is the Debtor's parent and proposed DIP lender, but it is not the Debtor. The Objection therefore relies principally on an alleged default and collateral dispute with Inveniam. That dispute does not establish that the Debtor's parent company acting as the DIP Lender or the proposed sale

procedures are improper. Inveniam is distinct from the Debtor. A parent's grant of a security interest in its equity interest in a subsidiary does not, without more, create a lien on assets owned by that subsidiary. The filings submitted by the Objectors are not made to protect the interest of a creditor but rather are made to apply pressure on the Debtor's parent company Inveniam to resolve their dispute. Their objections ignore the precarious liquidity position of this Chapter 11 estate and are in total disregard of the Debtor's actual creditors, employees, and its customers.

## LEGAL ARGUMENT

### I. DEBTOR'S POST-PETITION FINANCING AGREEMENT WITH ITS PARENT COMPANY SATISFIES 11 U.S.C. § 364

*a. Nothing Precludes Parent Company of Providing DIP Financing.*

Objectors assert that the Debtor has failed to prove the unavailability of alternative financing. This argument is designed to impose an impossible, non-statutory evidentiary burden that would force the Debtor into immediate operational death. The Debtor operates in a highly specialized, niche decentralized data storage sector with non-traditional asset profiles. The Debtor possesses zero unencumbered, liquid traditional collateral that a conventional third-party commercial lender would accept for an administrative loan under § 503(b)(1). Commercial lenders do not extend credit to an entity in chapter 11 bankruptcy without receiving unsecured post-petition cash to distressed technology entities without substantial credit enhancements. To suggest that a third-party lender would magically drop out of the sky to offer an unsecured loan to fund this Chapter 11 administration is an absurdity concocted solely for litigious posturing. Inveniam was—and remains—the only entity willing to extend the emergency liquidity necessary to meet payroll and keep server infrastructure online. The Debtor did not rush to file an emergency bankruptcy for its pleasure and entertainment. Instead, it faced a critical vendor threatening to pull access to the

cloud which if it occurred would not only resulted in complete destruction of the Debtor, but harm approximately 6,000 entities and individuals using the Debtor to store its data.

Objectors accuse the Debtor of secretly elevating Inveniam's pre-petition unsecured claim. This argument is baseless. The DIP loan from Inveniam infused sufficient cash to keep the Debtor alive. Post-petition liens secure exclusively new, indispensable post-petition liquidity keeping this business alive. Objectors attempt to manufacture a legal crisis by weaponizing *In re: Saybrook Manufacturing Co., Inc.*, 963 F.2d 1490 (11th Cir. 1992), falsely alleging that the proposed financing illegally cross-collateralizes Inveniam's pre-petition unsecured claim. Their reliance on *Saybrook* is devoid of factual basis. *Saybrook* exclusively condemns corrupt financing schemes where a lender uses a post-petition loan as leverage to secure pre-petition unsecured debt with post-petition assets. *see Saybrook*, 963 F.2d at 1492–93. Here, the DIP Agreement grants post-petition liens under 11 U.S.C. §§ 364(c)(2) and (c)(3) strictly and exclusively to secure new post-petition cash advances essential to paying employee payroll, maintaining server architecture, and covering administrative costs. Under clear, unbroken precedent, where post-petition liens exclusively collateralize new advances, claims of illegal cross-collateralization are totally baseless. *See In re: Tenney Village Co., Inc.*, 104 B.R. 562, 570 (Bankr. D.N.H. 1989); *In re: Beker Indus. Corp.*, 58 B.R. 725, 741–42 (Bankr. S.D.N.Y. 1986). **To provide further clarity to extent necessary, the Debtor explicitly reiterates that no post-petition liens granted under § 364 shall secure Inveniam's pre-petition unsecured claim, and no pre-petition debt will be elevated above general unsecured status**.

*b. Section 364(c) Requires Reasonable Business Judgment, Not Exhaustive Futile Canvassing*

Bankruptcy courts have repeatedly held that § 364(c) does not require a debtor to canvas every potential lender when market conditions and the debtor's capital structure make third-party

unsecured financing an obvious impossibility. *See In re: Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) (holding that § 364 does not require the debtor to contact every possible lender, but only to make reasonable efforts); *In re: Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988) (holding that where a debtor has no unencumbered liquid assets, requiring exhaustive outreach to third parties is "an exercise in futility"). Objectors perform legal acrobatics seizing on standard descriptive phrasing regarding non-priming financing to claim the Debtor's position does not make sense. The Debtor's position is crystal clear: because the estate lacked unencumbered liquid assets to induce unsecured § 503(b)(1) credit, the Debtor exercised sound business judgment under 11 U.S.C. § 364(c) to grant liens on unencumbered property and junior liens to obtain necessary funds. The Objectors offer no alternative lender, no competing commitment sheet, and no cash—only obstruction.

A debtor is fully authorized to grant secured post-petition debt under 11 U.S.C. § 364(c) when unencumbered unsecured credit under § 503(b)(1) is unachievable. Courts grant substantial deference to a debtor's business judgment in securing post-petition financing where alternative financing is impossible (*In re: Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994); *In re: Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990)). The Debtor and its counsel conducted an exhaustive market search. Third-party commercial lenders refused to extend unsecured credit under § 503(b)(1) due to the Debtor's lack of collateral, specialized technology assets and constrained liquidity. Inveniam provided the only operational lifeline keeping this estate from an immediate, catastrophic liquidation.

*c. The Debtor has satisfied section 364(c), and the Objectors identify no superior financing alternative.*

Section 364(c) requires a showing that unsecured credit available as an ordinary administrative expense is unavailable. The Debtor has made that showing in the DIP Motion and supporting

declaration. The proposed facility is limited in amount, provides immediately available liquidity, does not prime a valid existing estate lien, and is necessary to preserve operations and avoid value-destructive disruption. The Objectors' argument that the Debtor has not sufficiently explored alternatives does not identify a lender prepared to offer unsecured financing or financing on more favorable terms. Nor does it account for the realities of financing a chapter 11 debtor whose available sources of liquidity are limited. Section 364(c) does not require the Debtor to conduct an unlimited auction process before accepting the only available source of necessary financing. Further, the absence of scheduled secured claims against the Debtor supports the appropriateness of a lien under section 364(c)(2). The Debtor is not seeking to prime an established secured creditor of the estate. The relief requested is tailored to new funding that will be presented for court approval.

Objectors launch an attack on Inveniam's good faith rationale for acting as the DIP lender. Insider DIP financing is fully sanctioned under § 364 where terms are market-tested, transparent, and vital to preserving estate value. *See In re: Solar Trust of Am., LLC*, 2012 WL 11942031, at *4 (Bankr. D. Del. 2012); *In re: Mid-State Equip., Inc.*, 488 B.R. 59, 68 (Bankr. E.D. Wis. 2013). Inveniam stepped into the breach in good faith to supply emergency funds. Courts routinely grant § 364(e) good-faith status to insider and parent entity DIP lenders where the lender steps up to provide vital liquidity that no third party will offer, provided the transaction is transparent and overseen by independent restructuring advisors. *See In re: Solar Trust of Am., LLC*, 2012 WL 11942031, at *4 (Bankr. D. Del. 2012); *In re Mid-State Equip., Inc.*, 488 B.R. 59, 68 (Bankr. E.D. Wis. 2013). Inveniam did not extend credit to manipulate the estate; it extended credit to prevent the estate's immediate death. Negotiating under the direct supervision of Dr. Sayed Shuja Ali and legal counsel ensures complete structural integrity. Inveniam is fully entitled to the statutory

protections of 11 U.S.C. § 364(e). The Objectors' credit-bid argument assumes that Inveniam may credit bid its scheduled prepetition claim. That premise is incorrect. The Debtor will make clear that any credit-bid right applies only to the allowed amount of the lender's valid, postpetition secured DIP claim, subject to applicable law and any future sale order.

The Debtor also states that it has no intention to establish a cross-collateralization relationship. Instead, it asserts that post-petition liens secure strictly new, post-petition cash advances funding actual case administration. Pre-petition unsecured debt remains general unsecured debt. Also, net proceeds from asset sales will be held securely in the Debtor's counsel's IOLTA escrow account subject to Court authorization. If third parties have inter-creditor disputes with Inveniam, the bankruptcy court is not the forum to hold the Debtor's operational liquidity hostage over private contract grievances. Hence, Objectors should pursue their claims against Inveniam in an appropriate forum.

**II. THE SALE PROCESS COMPLIES WITH 11 U.S.C. § 363**

Objectors attack the proposed sale process for non-core software assets ("Valdi" and "Object Mount"), demanding that the Debtor waste immense estate funds on obsolete investment banking rituals. Their position defies both business sense and bankruptcy law. Approval of an asset sale under 11 U.S.C. § 363(b) requires only that the debtor show a sound business purpose for the chosen method. *See In re: Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re: Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). Debtors are expressly forbidden from throwing money away on exorbitant marketing schemes when direct, aggressive outreach to verified industry participants yields far superior results. *See In re: Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999). "Valdi" and "Object Mount" are highly specialized software IP products. Retaining expensive investment bankers or placing useless print ads in national

newspapers would bleed this estate dry for zero return. Directly targeting known strategic buyers, using the Debtor's digital infrastructure, and executing focused 1.5-hour technical demonstrations reaches the actual buyer demographic while saving the estate from substantial administrative expenses. Objectors further demand that a cash-strapped debtor squander thousands of dollars on useless investment banking retainers and worthless national newspaper ads for highly technical, specialized software assets, ("Valdi" and "Object Mount"). Here, targeted exposure in such a specialized industry with a limited market directly reaches 100% of the actual buyer demographic while aggressively preserving estate assets.

Objectors' further claim that the Debtor has improperly delegated authority to independent CPA Robert L. Nistendirk (Woomer Nistendirk & Associates). Objectors even state that the Debtor has abdicated judicial authority to an independent CPA. The CPA functions as nothing more than a mechanical escrow and bid collector. The Court—and only the Court—retains complete, uncompromised oversight and approval authority under 11 U.S.C. § 363 over any transaction. The CPA acts strictly as a neutral administrative bid-collector to maintain confidentiality and protect trade secrets prior to the submission deadline. *See In re: Food Boomers, Inc.*, 361 B.R. 342, 345 (Bankr. D. Conn. 2007) (approving independent agents for administrative bid intake). The Debtor evaluates financial terms, selects the highest or best offer, and submits the transaction to this Court. **The Court retains exclusive, absolute judicial authority to approve or deny any proposed sale under 11 U.S.C. § 363(f) and Bankruptcy Rule 6004**.

## III. PUBLIC AUCTION IS NOT A REQUISTE TO APPROVAL OF REASONABLE SALE PROCEDURES.

The Bankruptcy Code does not impose a categorical requirement that every section 363 sale be conducted through a live, public auction, much less an auction recorded by a court reporter or videographer. The relevant inquiry is whether the process is reasonably designed to test the market

and maximize value under the circumstances. Here, the proposed process provides for asset-specific marketing materials, publication on the Debtor's website, outreach to parties previously interested in the assets. Without no evidentiary basis other than pure speculation, the objection improperly treats the possibility of an Inveniam bid as proof of unfairness. The possibility that Inveniam, or a permitted acquisition vehicle, could submit a credit bid does not itself establish bad faith, inadequate marketing, or a lack of arm's-length competition. A credit bid is a recognized mechanism for a secured lender, subject to the Court's oversight and any applicable limitations. Nor does the possibility of an affiliated bidder eliminate the Debtor's duty to pursue value or prevent other qualified purchasers from participating.

Critically, the proposed process includes access to an online diligence room, technical presentations and access to key engineers, written bids submitted by a fixed deadline, and escrow of net proceeds pending further order of the Court. Those procedures reasonably solicit informed bids while avoiding the cost, delay, and disruption of an auction format that the objectors have not shown would produce additional value. The Objection offers no evidence that a public auction would yield a higher price, attract an identifiable additional bidder, or otherwise improve recoveries. Its requested auction requirement is thus speculative and disproportionate to the proposed sale of two discrete business divisions. Allegation that Inveniam could submit a credit bid does not establish bad faith, inadequate marketing, or a lack of arm's-length competition. A credit bid is a recognized mechanism for a secured lender, subject to the Court's oversight and any applicable limitations. Nor does the possibility of an affiliated bidder eliminate the Debtor's duty to pursue value or prevent other qualified purchasers from participating.

## IV. BASELESS ATTACKS ON CHIEF RESTRUCTURING OFFICER'S COMPENSATION

Objectors' assault on the Chief Restructuring Officer's (Dr. Sayed Shuja Ali) market-standard compensation is a transparent, premature distraction. It identifies no term of the proposed bidding procedures that authorizes improper payment or alters the priority of the DIP lender. **Any issue concerning compensation, payment authority, or the use of sale proceeds can be addressed on its own record and does not warrant withholding approval of a process intended to market and monetize estate assets**.

## V. STRICT COMPLIANCE WITH DUE PROCESS AND SECURE ESCROW

The sale notice fully complies with Bankruptcy Rules 2002(c) and 6004. All net sale proceeds will be locked down in the Debtor's counsel's IOLTA escrow account pending further order of this Court. The Objecting Parties will have every opportunity to present legitimate arguments regarding distribution before a single cent is moved.

## CONCLUSION AND RELIEF REQUESTED

WHEREFORE, the Debtor respectfully requests that this Court deny the Objections of Michael Ward and Robert Lamb in their capacities as collateral agents for certain former Hedgehog Invest Limited shareholders in their entirety; enter an Order approving the Sale Motion and proposed Sale Process without delay; enter a Final Order approving the DIP Motion immediately; and grant the Debtor such relief as the Court deems necessary to protect the Chapter 11 estate.

[Signatures appear on following page]

Dated: October 27, 2026

Respectfully Submitted

*/s/ Gregory D. Ellis*
Gregory D. Ellis
Georgia Bar No. 245310
Lamberth, Cifelli, Ellis & Nason, P.A.
6000 Lake Forrest Drive, N.W., Ste. 290
Atlanta, GA 30328
P: (404) 262-7373
gellis@lcenlaw.com

and

Christopher R. Arthur (WVSB #9192)
Admitted *Pro Hac Vice*
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Blvd. E.
Charleston, WV 25301
(304) 720-4090 *(Phone)*
carthur@spilmanlaw.com
***Counsel for Storj Labs Inc., Debtor-in possession***

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In RE:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 26-62642-PWB** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have on October 27, 2026, caused a copy of the **Debtor's Reply in Support of Motion to Authorize Post-Petition Financing and Use of Cash Collateral, and Debtor's Expedited Motion for Entry of an Order (A) Establishing Bidding and Sales Procedures, (B) Scheduling Final Deadlines to Submit Bids, and (C) Approving the Form and Manner of Notice Thereof** to be served via electronic mail on following parties set forth below:

jfitzgerald_tuckerlaw.com <jfitzgerald@tuckerlaw.com>;

Beth Harrill <Beth_Harrill@ganb.uscourts.gov>;

Martin Sheehan <Martin@Msheehanlaw.net>;

Bruce M. Jacobs <BJacobs@spilmanlaw.com>;

selliott@lewisgianola.com <selliott@lewisgianola.com>;

bmanne_tuckerlaw.com <BMANNE@TUCKERLAW.COM>;

McCartney, Lauren <lmccartney@tuckerlaw.com>;

mthomas_tuckerlaw.com <mthomas@tuckerlaw.com>;

rfranks@cdkrlaw.com <rfranks@cdkrlaw.com>;

kpallen@duanemorris.com<kpallen@duanemorris.com>
Alan Hinderleider <alan.hinderleider@usdoj.gov>;

darryl.laddin_agg.com <Darryl.Laddin@AGG.com>;

Ellis, Andrew H. <andrew.ellis@agg.com>;

Sheehan Paralegal <paralegal@Msheehanlaw.net>;

Gregory Ellis <gellis@lcenlaw.com>

I further certify that on this day I caused a copy of a copy of the **Debtor's Reply in Support of Motion to Authorize Post-Petition Financing and Use of Cash Collateral, and Debtor's Expedited Motion for Entry of an Order (A) Establishing Bidding and Sales Procedures, (B) Scheduling Final Deadlines to Submit Bids, and (C) Approving the Form and Manner of Notice Thereof** to be served via United States First Class Mail, with adequate postage prepaid, on the following parties set forth below:

Kevin P Allen
Duane Morris LLP
625 Liberty Avenue Suite 1000
Pittsburgh, PA 15222-3112

George A. R. Balchunas
1500 One PPG Place
Pittsburgh, PA 15222

James H. Billingsley
Duane Morris LLP
200 Crescent Court, Suite 900 Dallas,
TX 75201

Mark Harvilla
142 S El Molino Ave., Apt 2
Pasadena, CA 91101

Steven D. Haupt
7127 Warner Rd.
Saline, MI 48176

Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Nikhil Jaion
3016 E. Colorado Blvd. #5216
Pasadena, CA 91107

Jennifer Johnson
146 Osner Dr.
Atlanta, GA 30342

Helen Emmi Karin
5052 N Sandres Rd
Tucson, AZ 85743

Darrly S. Laddin, Esquire
Arnall Golden Gregory LLP
17117th Street NW
Suite 2100
Atlanta, Georgia 30363

Bryan Mangelson
1133 N 1190 E
American Fork, UT 84003 18

Dominick Marino
15941 E. Sunflower DR.
Fountain Hills, AZ 85268

Lauren Hutchins McCartney
Tucker Arensberg, P.C.
United Center 500 Virginia Street East Ste 1050
Charleston, WV 25301

Damein Morgan
2896 E Christopher Dr
Fresno, CA 93720

Goran Mrkonjic
Bukereska 14
1100 Beograd
Serbia

Robert L Nistendirk
Woomer, Nistendirk & Associates, PLLC
231 Capitol Street Ste 400
Charleston, WV 25301

Kimberly Pashel
746 Hillmont Ave.
Decatur, GA 30030

David R. Pogue
Carey Douglas Kessler & Ruby PLLC
707 Virginia Street East, Suite 901
Charleston, WV 25301

Christopher Rocco
610 N. Wagner Rd
Ann Arbor, MI 48103

Martin P. Sheehan
Sheehan & Associates, P.L.L.C. 19
1140 Main St., Ste 333 Wheeling, WV 26003

Donald Shott, Jr.
2568 S Park St.
Salt Lake City, Utah 84106

Andrea Steinke
3063 Quartz Hill Rd
Redding, CA 967003

Maribeth Thomas
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

Matthew Vicari
125 Ocean Pkwy
Apt 3F
Brooklyn, NY 11218

Jeremy Wharton
2767 Woodspring Forest Drive
Kingwood, TX 77345

Trisha Winter
35915 Fredericksburg Rd.
Farmington Hills, MI 48331

*/s/ Christopher R. Arthur*
Christopher R. Arthur (WVSB #9192)
Admitted *Pro Hac Vice*