**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 5:26-bk-00512** |
| | ) | |
| **Debtor.** | ) | **Chapter 11 Reorganization** |
| | ) | |

**DEBTOR STORJ LABS INC.'S MOTION FOR ENTRY OF (1) AN ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF DEBTOR'S OBJECT STORAGE BUSINESS, (B) APPROVING THE FORM AND MANNER OF NOTICE OF THE SALE, AUCTION AND SALE HEARING, AND (C) SCHEDULING AN AUCTION AND SALE HEARING TO APPROVE THE SALE; AND (2) AN ORDER AUTHORIZING THE SALE FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES**

Storj Labs Inc., debtor and debtor-in-possession in the above-captioned chapter 11 case (the "Debtor"), by and through its undersigned counsel, respectfully moves pursuant to sections 105, 363, 365 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of (1) an order (a) approving the bidding procedures attached hereto as **Exhibit A** (the "Bidding Procedures"), substantially in the form to be filed as **Exhibit D** (the "Bidding Procedures Order"), for the sale of substantially all of the Debtor's assets[1], including its core Object Storage business (as defined below, the "Business"), (b) approving the form and manner of notice of the sale, the auction and the sale hearing, substantially in the form attached as **Exhibit B** (the "Sale Notice"), (c) scheduling an auction (the "Auction") and a hearing to approve the sale (the "Sale Hearing"); and (2) following the Auction, an order (the "Sale Order"), authorizing the sale of the Business to

[1] Asset sale excludes any recoveries pursuant to Confidential Settlement and Release Agreement with WithumSmith + Brown, PC. Debtor will amend schedules reflecting that this settlement represents potential asset to the Debtor's estate.

the Successful Bidder free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code.

In support of this Sale Motion, the Debtor respectfully represents as follows:

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding. Venue is proper under 28 U.S.C. §§ 1408 and 1409. Relief is authorized under sections 105(a), 363, 503, and 507 of the Bankruptcy Code, and Bankruptcy Rules 2002, 4001, 6004, 9007, and 9014.

## INTRODUCTION

2. On July 26, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the Chapter 11 Case.

3. The Debtor seeks approval of a structured, time-bound, competitive marketing and auction process designed to put the Business in front of every category of buyer that could plausibly own it — strategic cloud and storage operators, infrastructure and data-management vendors, decentralized-storage and web3 organizations, financial sponsors, the Debtor's own largest customers and partners, and its community of independent storage node operators — and to let that competition, rather than negotiation with a single party, determine the highest or otherwise best value.

4. The Debtor is in a materially different position from the one in which it filed this case. Since the Petition Date it has reduced headcount from roughly ninety employees at the start of 2026 to ten, cut fixed infrastructure by approximately three-quarters, ended support for unprofitable non-core products, and reduced its monthly cash burn from more than $500,000 to a

level that is close to break-even. Customer billings have stabilized at roughly $375,000 per month on a recurring, contracted base.

5. The Object Storage platform itself — a globally distributed, S3-compatible object storage service operating on tens of thousands of independently operated storage nodes in more than one hundred countries — continues to serve its customers without interruption. In short, the Debtor is offering a stabilized, operating technology business with an installed enterprise customer base, not a collection of distressed assets.

6. Section IV of this Motion describes the marketing plan in detail — the buyer universe, the materials, the sequence of outreach, the data room, the management presentations, and the publication program — and Exhibit C sets it out as a dated work plan.

7. The Debtor has already had direct contact with more than sixty prospective buyers and investors in the course of its pre-petition financing efforts and the ongoing sale of its non-core assets, and will expand that outreach to a target list of not fewer than one hundred and fifty parties within five business days of entry of the Bidding Procedures Order.

## ASSET TO BE SOLD

### The Object Storage Business

8. The Debtor's core business is Storj Object Storage: a globally distributed, S3-compatible cloud object storage service. Rather than storing customer data in a small number of company-owned data centers, the platform encrypts each file at the client, splits it into erasure-coded pieces, and distributes those pieces across a network of tens of thousands of independently operated storage nodes in more than one hundred countries. Coordinating software operated by the Debtor (the "satellites") tracks metadata, audits node performance, repairs data when nodes fail,

and settles payment to node operators. Customers access the service through a hosted or self-hosted S3-compatible gateway, native client libraries, a web console and a link-sharing service, so that the platform functions as a drop-in replacement for Amazon S3 and comparable hyperscale offerings.

9. The architecture produces a distinctive combination of attributes. Data is end-to-end encrypted and distributed by default; the network is designed to deliver 99.99% of durability and 99.95% availability without replication; uploads and downloads are consistently fast from any geography because every customer is close to many nodes; and because the platform monetizes under-utilized capacity rather than building data centers, the Debtor has historically priced storage and egress at a substantial discount to the hyperscale providers while maintaining a materially lower carbon footprint. The Debtor offers the platform both as a public cloud service and as "Storj Private Cloud," a self-hosted deployment on commodity hardware for enterprises that wish to pool their own stranded capacity.

10. Debtor serves enterprise customers in media and entertainment, backup and archive, home-security and IoT video, scientific and research data, and AI/ML training and inference workloads, together with a long tail of self-service developers and small businesses billed through an online payment processor. The Debtor's non-public customer schedule, concentration analysis and net expansion data will be made available to Qualified Bidders in the data room and provided to the Court and the Office of the United States Trustee under seal upon request.

11. The Debtor's intellectual property includes the satellite, storage-node, uplink, gateway and link-sharing software (substantial portions of which the Debtor has released under open-source licenses while retaining the proprietary components, the brand, the network, and the

operating know-how that give the platform its commercial value), the Storj name and marks, the storj.io domain and related digital properties, the customer and node-operator relationships, and the operational data accumulated over the life of the network.

12. Estimated Value: Debtor estimates the fair market value of the asset at $4,000,000.

## ENCUMBRANCES

13. Inveniam Capital Partners, Inc. ("Inveniam"), Debtor's parent, is the DIP Lender who provided debtor-in-possession financing of $260,000 at 18% interest. Additionally, Michael Ward and Robert Lambert, as Collateral Agents for certain sellers of stock to Inveniam, assert that they have a security agreement with Inveniam which pledged Inveniam's interests in Storj to the Collateral Agents, and perfected their security interests by filing various financing statements (UCC-1s) against, *inter alia*, Storj and Inveniam. Thus, the Collateral Agents assert that they should receive distributions that would otherwise go to Inveniam.

Debtor acknowledges a dispute exists between Inveniam and the Collateral Agents and agrees to escrow all proceeds from the sale of these assts and allow claims against the escrowed funds to be determined by the Court without prejudice to the Debtor later seeking authority to release the escrowed funds. Debtor agrees to file notice with the Court calculating the total owed on the DIP Loan, plus interest at the time the money is paid into an escrow account.

## THE SALE PROCESS AND RELATED ITEMS

### A. The Need for an Expedited Notice and Sale Process

14. The Debtor has filed this Sale Motion on an expedited basis to ensure the Debtor is able to complete the sale of the assets in a timely manner.

### B. The Deadlines Contained in the Bidding Procedures Are Reasonable and Will Provide an Adequate Opportunity for Interested Parties to Submit Bids

15. In formulating the procedures and time periods, the Debtor had two principal objectives: (a) providing adequate and appropriate notice to parties in interest and to potential purchasers; and (b) efficiently selling the Asset. The Debtor believes the Bidding Procedures achieve both objectives under the facts and circumstances of this Chapter 11 Case. In the exercise of its business judgment, Debtor believes the parties who may have an interest in bidding at the Auction are among its creditors, investors, and competitors. Further, Debtor has already organized a virtual data room making due diligence expeditious for interested parties. Thus, the timeline in the Bidding Procedures will not prevent any party interested and capable of purchasing the assets from conducting due diligence and submitting a bid.

16. The Debtor identified and communicated with potential purchasers who may have an interest in purchasing the technology identified above. The Debtor will undertake commercially reasonable marketing efforts, including advertising through online platforms, direct outreach to potential buyers, and email marketing to sell the assets.

17. Debtor proposes the following sale process:

**THE MARKETING PROCESS**

18. The Debtor is a small company without the resources to retain an investment bank on customary terms. The marketing process will therefore be led by the Debtor's Chief Restructuring Officer, Dr. Shuja Ali, supported by the Debtor's remaining senior engineers, its outside accountants and its counsel, and will follow the structure a banker-led process would follow. The Debtor describes it in detail so that the Court, the United States Trustee, creditors and parties in interest can evaluate its adequacy on the record.

**A. The Buyer Universe**

19. The Debtor has identified six categories of prospective purchasers, each with a different rationale for acquiring the Business:

(i) **Cloud and object-storage operators.** Companies that sell S3-compatible storage and would acquire the Business for its customer base, its differentiated distributed architecture, its brand, or its low-cost capacity. This category includes independent cloud storage providers, backup and media-cloud vendors, and regional cloud operators. Several such parties executed non-disclosure agreements with the Debtor in August and September 2026 in connection with the non-core asset sales and have been informed that the Business itself will be offered.

(ii) **Storage, data-management and infrastructure vendors.** Hardware and software companies for which a globally distributed storage network is a natural extension of an existing product line — storage-system manufacturers, data-orchestration and file-system vendors, media-asset-management providers, and NAS and private-cloud platform companies. Four such parties have executed non-disclosure agreements with the Debtor since August 2026.

(iii) **Decentralized-storage and web3 organizations.** Foundations, protocol companies and infrastructure platforms in the decentralized-storage sector, for which the Debtor's network of independent node operators, its payment and audit systems, and its enterprise S3 customers are directly relevant. The Debtor has had substantive discussions with several such parties in 2026, including at least one that made an offer for a portion of the Business earlier this year.

(iv) **Financial sponsors and special-situations investors.** Private-equity, growth and distressed investors with software-infrastructure portfolios, including parties that evaluated an investment in or acquisition of the Debtor between March and July 2026, and funds that specialize in acquiring and operating cash-generative software businesses out of chapter 11.

(v) **Customers and commercial partners.** The Debtor's largest enterprise customers, reseller and channel partners, and infrastructure counterparties, several of which depend on the platform and have a strategic interest in its continuity. The Debtor will approach each of its top twenty customers directly.

(vi) **The storage node operator community and open-source ecosystem.** The independent operators who provide the network's capacity, and the developers who contribute to its open-source components, include entities with the technical capability and the economic interest to acquire or sponsor the Business, individually or in combination. The Debtor will notify its node-operator mailing list and community forum of the sale process and invite expressions of interest.

20. In the course of its pre-petition capital-raising effort (March–July 2026) and its post-petition non-core asset sales, the Debtor has had direct contact with more than sixty identified individuals and entities across these categories, of which more than ten have executed non-disclosure agreements since the Petition Date. The Debtor maintains a contact log recording each party, its category, the date and nature of contact, the status of any non-disclosure agreement, and the outcome. That log, which contains commercially sensitive information, will be provided to the United States Trustee and, if the Court so directs, filed under seal. Within five business days after entry of the Bidding Procedures Order the Debtor will expand the target list to not fewer than one

hundred and fifty parties, drawing on industry databases, the Debtor's own commercial relationships, and referrals from parties already engaged.

**B. Marketing Materials**

21. The Debtor has prepared or is finalizing the following materials, each of which will be available on the first business day after entry of the Bidding Procedures Order (and, to the extent not confidential, immediately upon the filing of this Motion):

- A two-page teaser describing the Business, the sale process and the key dates, distributed without a non-disclosure agreement to the full target list and published on the Debtor's website;
- A form non-disclosure agreement, on terms customary for a section 363 sale, which the Debtor will execute without negotiation on substantially those terms so that no prospective bidder is delayed at the threshold;
- A confidential information memorandum of approximately thirty pages covering the platform architecture, the customer base and concentration, the node-operator network and economics, historical and post-petition financial performance, the cost structure before and after the Petition Date, the thirteen-week cash flow, the organization and the eleven remaining personnel, and the intellectual property;
- A business and technical deep-dive presentation of approximately two hundred pages, already prepared, covering the service components, durability and availability design, security architecture, multi-tenant isolation, integration patterns, deployment options and operating metrics;
- A financial package comprising monthly operating results, the customer billing history by customer, the node-operator payout history, and a buyer-oriented pro forma model showing the Business at its current cost structure;
- A standard asset purchase agreement (the "Form APA"), to be filed not later than ten days after entry of the Bidding Procedures Order, against which all bids must be marked, together with a proposed form of sale order; and

**C. Sequence of Outreach**

22. Outreach will proceed in three waves so that the parties most likely to bid are engaged first and the broader market is reached while they are in diligence:

(a) **Wave 1 — Day 1 to Day 3 after entry of the Bidding Procedures Order:** direct outreach by the Chief Restructuring Officer, by email and telephone, to every party that has had prior contact with the Debtor regarding an acquisition, investment or financing in 2026, and to every party that has executed a non-disclosure agreement, together with the teaser and the form non-disclosure agreement.

(b) **Wave 2 — Day 3 to Day 10:** outreach to the expanded target list of not fewer than one hundred and fifty parties; direct approaches to the Debtor's top twenty customers and its channel and infrastructure partners; notice to the storage node operator community through the Debtor's operator mailing list and forum; and publication as described below.

(c) **Wave 3 — Day 10 to the Bid Deadline:** follow-up with every party that has received the teaser; weekly reporting of data-room activity; management presentations; and responses to diligence requests. The Chief Restructuring Officer will maintain a log of every contact and will file a summary of the marketing process, without disclosing bidder identities, before the Sale Hearing.

**D. Publication**

23. In addition to direct outreach, the Debtor will publish notice of the sale process (a) on the Debtor's website and in an email to its customer base; (b) on the principal online marketplaces for distressed and bankruptcy asset sales; and (c) through the Debtor's and its officers' professional social-media channels. Publication will occur within five business days after entry of

the Bidding Procedures Order and will be repeated not less than fourteen days before the Bid Deadline.

**E. The Data Room and Due Diligence**

24. The Debtor has assembled a virtual data room containing the materials described above together with customer contracts, node-operator terms, vendor and infrastructure agreements, the Debtor's schedules and statements, the DIP financing documents, corporate records, intellectual-property registrations and open-source license inventories, security and compliance documentation, and the source-code repositories (made available for review under appropriate technical controls). Access will be granted to any party that executes the non-disclosure agreement and provides the information required to be a Potential Bidder under the Bidding Procedures. The data room tracks every document viewed by every user, and the Debtor will use that record to prioritize follow-up. The Debtor's senior engineers will be available to answer technical diligence questions on a scheduled basis.

**F. Management Presentations**

25. Beginning in the second week after entry of the Bidding Procedures Order, the Debtor will hold live virtual management presentations, each of approximately two hours, at which the Chief Restructuring Officer and the Debtor's senior engineers will present the Business, demonstrate the platform, and take questions. The Debtor will hold at least two general sessions and will offer private sessions to any Potential Bidder that requests one. A recorded version will be available in the data room for parties in other time zones.

**THE PROPOSED TIMELINE**

27. The Debtor proposes the following schedule, subject to the Court's availability. The schedule gives prospective bidders approximately six weeks between entry of the Bidding

Procedures Order and the Bid Deadline, which the Debtor believes is adequate for a software business of this size whose diligence materials are already assembled, and brings the Auction and Sale Hearing within the Debtor's projected liquidity.

| Event | Proposed date | Notes |
|---|---|---|
| Filing of this Motion | November 5, 2026 | Teaser and form NDA circulated to prior contacts by November 6, 2026 |
| Hearing on Bidding Procedures (expedited) | On or about December 3, 2026 | Subject to Court availability |
| Wave 1 and Wave 2 outreach; data room open | November 9, 2026 – November 17, 2026 | Target list of not fewer than 150 parties |
| Management presentations | November 9 – November 20, 2026 | At least two general sessions plus private sessions on request |
| Bid Deadline | December 20, 2026 at 4:00 p.m. (Eastern) | Objective is at least 14 days after the Bidding Procedures Order |
| General sale objection deadline | December 30, 2026 at 4:00 p.m. (Eastern) | Objections to the sale generally |
| Notice of Qualified Bidders | December 18, 2026 | Debtor notifies bidders and Consultation Parties |
| Auction | December 21, 2026 at 10:00 a.m. (Eastern) | Virtual, at the offices of Debtor's counsel, or both |
| Notice of Successful Bidder and Back-Up Bidder | December 21, 2026 | Filed and served the same day |
| Sale Hearing | On or about January____2027 | Subject to Court availability |
| Target Closing | On or before January 15, 2027 | Outside date January 31, 2027 |

## THE BIDDING PROCEDURES

29. The Bidding Procedures are attached as Exhibit A and are summarized here. In the event of any inconsistency, Exhibit A controls.

(a) **Assets.** The Business, comprising substantially all of the Debtor's assets other than the Valdi and Object Mount assets being sold under separate motion, cash, avoidance actions, tax refunds and other Excluded Assets identified in the Form APA. Bidders may bid for the Business as a whole, for the Debtor's equity under a plan, or — if the Debtor determines that doing so may produce greater aggregate value — for identified components, provided that the Debtor will not accept a bid for a component unless the aggregate of component bids exceeds the best bid for the whole.

(b) **Potential Bidders.** A party becomes a Potential Bidder, entitled to data-room access and management presentations, a statement identifying the bidder and its principals and any connection to the Debtor, the DIP Lender, Ward/Lamb or any insider, and preliminary evidence of financial capacity satisfactory to the Debtor, in its sole discretion. Debtor asserts that the DIP Lender is not authorized to act as a potential bidder and will not be deemed a qualified potential bidder. Nonetheless, if the DIP Lender bids either through itself or through an existing or newly formed subsidiary, the Debtor will immediately notify counsel to Ward and Lamb so that objections, if any, may be filed prior to the Auction.

(c) **Qualified Bids.** A bid is a Qualified Bid if, by the Bid Deadline, it (i) is in writing and irrevocable until the earlier of closing of a sale to another bidder or thirty days after the Sale Hearing; (ii) is accompanied by a marked Form APA with a redline;

(iii) states a cash purchase price, together with any assumed liabilities, with no financing, corporate or board approval, or diligence contingency; (iv) is accompanied by a good-faith deposit of ten percent (10%) of the cash purchase price by wire to the IOLTA trust account of Debtor's counsel; (v) identifies the executory contracts to be assumed and provides evidence of adequate assurance of future performance, including the bidder's intention regarding storage node operator payments and customer service continuity; (vi) provides evidence of the bidder's ability to close, including committed financing or proof of funds; (vii) states whether the bidder intends to offer employment to any of the Debtor's personnel; (viii) acknowledges that the bidder has relied solely on its own diligence and that the Business is sold as-is; (ix) does not request any break-up fee, expense reimbursement or other bid protection); and (x) is authorized by the bidder's governing body. The Debtor, after consultation with the Consultation Parties, may waive non-material deficiencies.

(d) **Consultation Parties.** the DIP Lender, and the Collateral Agents; provided that the DIP Lender shall cease to be a Consultation Party and is not eligible to submit a qualified bid and shall receive no bidder information not available to other bidders, from the time it or any existing or newly formed affiliate submits a bid or expresses an intention to do so.

(e) **Auction.** If more than one Qualified Bid is received, the Debtor will conduct the Auction on the date set out above. The Debtor will announce before the Auction which Qualified Bid it has determined to be the highest or otherwise best (the "Baseline Bid") and the basis for that determination. Bidding will proceed in open

rounds; each overbid must exceed the then-prevailing bid by not less than $1,000 (or such other increment as the Debtor announces at the Auction after consultation with the Consultation Parties); each Qualified Bidder must confirm it has not colluded with any other bidder; the Auction will be transcribed; and the Debtor may, after consultation, adjourn the Auction, adopt rules not inconsistent with the Bidding Procedures, and reject any bid that is inadequate, insufficient, not in conformity with the Bankruptcy Code or the Bidding Procedures, or contrary to the interests of the estate. In evaluating bids the Debtor will consider, among other things, the cash purchase price, the DIP Loan, the treatment of customers and storage node operators, the proposed employment of the Debtor's personnel, the certainty and timing of closing, and the form of consideration.

(f) **Successful Bidder and Back-Up Bidder.** At the conclusion of the Auction the Debtor will designate the Successful Bidder and the next-highest bidder as the Back-Up Bidder, whose bid remains open until the earlier of closing with the Successful Bidder or thirty days after the Sale Hearing. If the Successful Bidder fails to close, the Debtor may close with the Back-Up Bidder without further order, and the Successful Bidder's deposit will be forfeited to the estate as liquidated damages.

(g) **If only one Qualified Bid is received,** the Debtor will not hold an Auction and will seek approval of that bid at the Sale Hearing.

(h) **Fiduciary reservation.** Nothing in the Bidding Procedures prevents the Debtor from taking any action required by its fiduciary duties, including terminating the process if no Qualified Bid is received.

(i) **Communications.** All communications with the Debtor regarding the sale are to be directed to the Chief Restructuring Officer, with copies to Debtor's counsel. No bidder may communicate with the Debtor's customers, node operators, employees or vendors regarding the sale without the Debtor's prior consent.

**NOTICE OF THE SALE**

31. Within three business days after entry of the Bidding Procedures Order, the Debtor will serve the Sale Notice by first-class mail or electronic mail on (a) the Office of the United States Trustee; (b) all creditors listed on the Debtor's schedules; (c) all parties that have requested notice under Bankruptcy Rule 2002; (d) the DIP Lender and its counsel; (e) Collateral Agents and their counsel; (f) all known parties asserting a claim or interest in the Business; (g) the Internal Revenue Service and applicable state taxing authorities; (h) all parties that have expressed interest in acquiring the Business or its components in 2026; and (i) the Debtor's customers and storage node operators by electronic mail (collectively, the "Notice Parties"). The Sale Notice will state the key dates, the manner of obtaining the Bidding Procedures and the Form APA, the objection deadlines, and the time and place of the Auction and the Sale Hearing. The Debtor submits that this notice, together with the publication program described above, satisfies Bankruptcy Rules 2002 and 6004 and constitutes good and sufficient notice of the sale.

**BASIS FOR RELIEF REQESTED**

**A. The Bidding Procedures Are Sound Exercise of Business Judgment and Will Maximize Value**

32. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor-in-possession, after notice and a hearing, to sell property of the estate outside the ordinary course of business. Courts approve such sales where the debtor demonstrates a sound business justification. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re*

*Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir. 1986). Once a sound business justification is shown, the debtor's decision is entitled to the presumption of the business judgment rule. *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986).

33. Bidding procedures are routinely approved where they are designed to produce a fair, open and competitive process. The procedures proposed here meet that standard: they are open to every category of buyer; they impose uniform qualification requirements; they provide a reasonable period for diligence supported by a complete data room and management access; they provide for an open auction with transparent overbid increments and a transcript; they protect the integrity of the process by excluding any bidder, including the DIP Lender, from the consultation group; they preserve the Debtor's ability to accept the highest or otherwise best bid on criteria announced in advance; and they reserve the Debtor's fiduciary discretion. *See In re Gulf Coast Oil Corp.*, 404 B.R. 407, 422-23 (Bankr. S.D. Tex. 2009) (discussing the factors bearing on the adequacy of a section 363 sale process).

34. The sound business justification for a sale is set out above: the Debtor cannot fund a stand-alone reorganization, the Business is stabilized and operating, its value depends on the continuity of customers, operators and personnel that a prolonged case would erode, and a competitive process is the method most likely to establish and capture the Business's value. The Debtor has considered the *Lionel* factors — the proportion of the estate represented by the Business, the time elapsed since filing, the prospects for a plan, the effect of the sale on any plan, the relationship of expected proceeds to value, and whether the asset is appreciating or depreciating — and each supports an expeditious sale.

**B. The Sale Should Be Free and Clear Under Section 363(f)**

35. Section 363(f) permits a sale free and clear of any interest in property if any one of five conditions is satisfied: the sale price exceeds the aggregate value of all liens; the interest holder consents; the interest is in bona fide dispute; the interest holder could be compelled to accept a money satisfaction; or applicable non-bankruptcy law permits a sale free and clear. The DIP Lender's lien will attach to the proceeds with the same validity and priority, and the Debtor expects the DIP Lender, which is the Debtor's parent, to consent. The interests asserted by Ward/Lamb are in bona fide dispute for the reasons stated above, satisfying section 363(f)(4), and are in any event lien interests that attach to proceeds and for which the holder could be compelled to accept a money satisfaction. **Any party that receives notice and does not object will be deemed to consent**. *See Futuresource LLC v. Reuters Ltd*., 312 F.3d 281, 285-86 (7th Cir. 2002).

**C. The Successful Bidder Should Receive the Protections of Section 363(m)**

36. Section 363(m) protects a good-faith purchaser from the effect of reversal or modification on appeal. Good faith is shown by the absence of fraud, collusion or an attempt to take grossly unfair advantage of other bidders. In re Abbotts Dairies, 788 F.2d at 147. The Bidding Procedures require each bidder to disclose its connections and to certify the absence of collusion, require all bidders to be treated uniformly, and provide for a transcribed public auction. The Debtor will present evidence at the Sale Hearing of the Successful Bidder's good faith and requests a finding to that effect as part of the order confirming the sale. Per agreement with Collateral Agents, Debtor will escrow all proceeds from the sales of these assets and allow parties to assert claims to distribution of those proceeds to be determined by the Court. All proceeds shall be held in escrow in the Debtor's counsel's IOLTA account pending further order of this Court.

**D. The Court Should Waive the Stays Under Bankruptcy Rules 6004(h) and 6006(d)**

37. The Debtor requests that the Sale Order be effective immediately. The Business's value depends on continuity of service to customers and payments to node operators; a fourteen-day delay after the Sale Hearing would push closing into the new year, increase administrative expense and create unnecessary uncertainty for counterparties. The Debtor submits that cause exists to waive the stays.

**E.**

## RESERVATION OF RIGHTS

39. Nothing in this Motion or the Bidding Procedures is an admission as to the validity, priority or amount of any claim or lien, a waiver of the Debtor's rights to dispute any claim or lien, including those asserted by Ward/Lamb, or a determination of the respective rights of the DIP Lender and Ward/Lamb in the sale proceeds. The Debtor reserves the right to modify the Bidding Procedures, with the consent of the Consultation Parties or further order of the Court, to implement a plan-sponsor transaction, and to seek approval of any sale through a chapter 11 plan.

## NO PRIOR REQUEST

40. No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (1) enter the Bidding Procedures Order approving the Bidding Procedures, the Sale Notice, and the Auction and Sale Hearing schedule; (2) following the Auction, enter the Sale Order authorizing the sale of the Business to the Successful Bidder free and clear of all liens, claims, interests and encumbrances,,

finding that the Successful Bidder is a good-faith purchaser under section 363(m), and waiving the stays of Bankruptcy Rules 6004(h) and 6006(d); and (3) grant such other and further relief as is just and proper.

Dated: November __, 2026

Respectfully submitted,

STORJ LABS INC.
By its counsel,

*/s/ Christopher R. Arthur* (Admitted pro hac)
Christopher R. Arthur (WVSB #9192)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Blvd. E., Charleston, WV 25301
(304) 720-4090 · carthur@spilmanlaw.com

*/s/ Gregory D. Ellis*
Gregory D. Ellis (Georgia Bar No. 245310)
LAMBERTH, CIFELLI, ELLIS & NASON, P.A.
6000 Lake Forrest Drive, N.W., Suite 290,
Atlanta, GA 30328
(404) 262-7373 · gellis@lcenlaw.com
Counsel for the Debtor and Debtor-in-Possession

**EXHIBIT A**

**BIDDING PROCEDURES**

Capitalized terms not defined in these Bidding Procedures have the meanings given in the Motion.

| Term | Provision |
|---|---|
| 1. Assets Offered | The Business: substantially all of the Debtor's assets used in the Storj Object Storage business, including the satellite, storage-node, uplink, gateway, link-sharing and console software and all related source code, documentation and know-how; the Storj name, marks, domains (including storj.io) and digital properties; customer agreements and relationships; storage node operator terms and relationships; infrastructure, hosting and software agreements designated for assumption; operational data; and goodwill. Excluded: the Valdi and Object Mount assets, cash and cash equivalents, avoidance actions, tax refunds, insurance proceeds, corporate and bankruptcy records, and any other Excluded Assets identified in the Form APA. Bids may be structured as an asset purchase under section 363 or as a plan-sponsor transaction acquiring the equity of the reorganized Debtor. |
| 2. Potential Bidder | A party that delivers to the Debtor (a) an executed confidentiality agreement in the Debtor's form; (b) a statement identifying the bidder, its ultimate beneficial owners, and any connection with the Debtor, the DIP Lender, , or any insider of the Debtor; and (c) preliminary evidence of financial capacity reasonably satisfactory to the Debtor in its sole discretion. Potential Bidders receive data-room access and may attend management presentations. |
| 3. Bid Deadline | December 20, 2026 at 10:00 a.m. (Eastern prevailing time). Bids must be delivered by electronic mail to the Chief Restructuring Officer and Debtor's counsel at the addresses in the Sale Notice. Bids are held confidential until the Notice of Qualified Bidders, except from the Consultation Parties. If a potential bidder has identified an interest with Collateral Agents/Ward/Lamb, then Collateral Agents/Ward/Lamb and their counsel will be provided identification of the bidder and copies of the bid immediately upon receipt of the bid by the Debtor. |
| 4. Qualified Bid | A written bid that: (a) is irrevocable until the earlier of closing of a sale to another bidder or thirty days after the Sale Hearing; (b) includes a marked Form APA (or plan-sponsor term sheet) and a redline; (c) states |

| **Term** | **Provision** |
|---|---|
| | a cash purchase price and any assumed liabilities, without financing, diligence or corporate or board-approval contingency; (d) is accompanied by a deposit of ten percent of the cash purchase price wired to the IOLTA trust account of Debtor's counsel; (e) includes evidence of ability to close (committed financing, bank statements or proof of immediately available funds); (f) states the bidder's intention regarding employment of the Debtor's personnel, consisting of eight engineers; (g) acknowledges the as-is nature of the sale and reliance solely on the bidder's own diligence; (h) requests no bid protections); (i) is authorized by the bidder's governing body; and (j) is received by the Bid Deadline. The Debtor, after consultation, may waive non-material deficiencies. |
| 5. Component Bids | The Debtor may consider bids for identified components of the Business, but will not accept any component bid unless the aggregate of component bids, net of incremental costs, exceeds the best bid for the Business as a whole. |
| 6. Credit Bidding | The DIP Lender may not credit bid, and the Debtor acknowledges that the DIP Lender is not entitled to credit bid, and will not be deemed a qualified bidder. |
| 7. Consultation Parties | , the DIP Lender, and the Collateral Agents. The DIP Lender is not authorized to submit a bid. |
| 8. Notice of Qualified Bidders | By December 20, 2026 the Debtor will notify each bidder whether its bid is a Qualified Bid, notify all Qualified Bidders of the Baseline Bid, and provide copies of all Qualified Bids to all Qualified Bidders , the Consultation Parties and the United States Trustee. |
| 9. Auction | December 21, 2026 at 10:00 a.m. (Eastern), conducted by video conference and, at the Debtor's election, and/or in person at the office of Spilman Thomas & Battle PLLC in Charleston, West Virginia. Qualified<br><br>.Bidders and their advisers may attend; creditors and parties in interest may attend as observers on request. The Auction will be recorded and transcribed. Bidding proceeds in open rounds from the Baseline Bid in minimum increments of $1,000 (or such increment as the Debtor announces after consultation). Each bidder must appear through an authorized representative, confirm it has not engaged in collusion, and |

| **Term** | **Provision** |
|---|---|
| | confirm its bid is binding. The Debtor may adjourn the Auction, adopt rules consistent with these procedures, and request best-and-final offers. |
| 10. Evaluation Criteria | The Debtor will determine the highest or otherwise best bid considering: cash purchase price; assumed liabilities and cure amounts; treatment of customers, storage node operators and the Debtor's personnel; certainty of closing, including proof of ability to close satisfaction of regulatory conditions; speed of closing; form of consideration; and any other factor the Debtor, after consultation, considers relevant to the interests of the estate and creditors. |
| 11. Successful and Back-Up Bidders | At the close of the Auction the Debtor will designate the Successful Bidder and the Back-Up Bidder and file notice the same day. The Back-Up Bid remains irrevocable until the earlier of closing with the Successful Bidder or thirty days after the Sale Hearing. If the Successful Bidder fails to close, the Debtor may close with the Back-Up Bidder without further order and the Successful Bidder's deposit is forfeited to the bankruptcy estate as liquidated damages. |
| 12. Deposits | Deposits are held in trust, without interest, and returned to unsuccessful bidders within five business days after the Sale Hearing (or, for the Back-Up Bidder, after its bid expires). The Successful Bidder's deposit is applied to the purchase price at closing or forfeited on its default. |
| 13. Sale Hearing | On or about ________ _____, 202__, subject to the Court's calendar. Objections to the sale are due by December 30, 2026 on or before 4:00 p.m. (Eastern). |
| 14. As-Is Sale | The Business is sold as-is, where-is, without representations or warranties of any kind except as expressly set out in the final asset purchase agreement approved by the Sale Order. |
| 15. Fiduciary Reservation; Modification | The Debtor reserves the right, consistent with its fiduciary duties and after consultation, to modify these procedures, to extend deadlines, to terminate the process, and to pursue any alternative transaction or a stand-alone plan, provided however that notice will be provided to the United States Trustee and all parties who have requested notice. The Court retains jurisdiction over all disputes arising under these procedures. |

| **Term** | **Provision** |
|---|---|
| 16. Communications | All inquiries to: Shuja Ali, Chief Restructuring Officer, with copies to Christopher R. Arthur (carthur@spilmanlaw.com) and Gregory D. Ellis (gellis@lcenlaw.com). Bidders may not contact the Debtor's customers, node operators, personnel or vendors regarding the sale without the Debtor's prior written consent. |

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF GEORGIA**

**ATLANTA DIVISION**

| | |
|---|---|
| In re:<br><br>**STORJ LABS INC.,**<br><br>Debtor. | Chapter 11<br><br>Case No. 26-62642-PWB |

**EXHIBIT B**

**NOTICE OF SALE OF SUBSTANTIALLY ALL ASSETS OF STORJ LABS INC., BIDDING PROCEDURES, AUCTION AND SALE HEARING**

PLEASE TAKE NOTICE THAT:

On November 6, 2026 Storj Labs Inc. (the "Debtor") filed a motion (the "Motion") seeking approval of procedures for the sale of substantially all of its assets, including its Object Storage business (the "Business"), free and clear of liens, claims, interests and encumbrances. On December __, 2026 the Court entered an order (the "Bidding Procedures Order") approving the bidding procedures (the "Bidding Procedures").

Any party interested in acquiring the Business should contact Shuja Ali, Chief Restructuring Officer, at the address below to obtain a confidentiality agreement and access to the data room.

The deadline to submit a bid is December 20, 2026 at 10:00 a.m. (Eastern). Bids must comply with the Bidding Procedures, including delivery of a marked asset purchase agreement, proof of financial ability to close, and a deposit of ten percent of the bid price.

If more than one qualified bid is received, an auction will be held on December 21, 2026 at 10:00 a.m. (Eastern) by video conference and, at the Debtor's election, at the office of Spilman Thomas & Battle PLLC, 300 Kanawha Blvd., East, Charleston, West Virginia 25271.

Notice of the successful bid and back up bid will be provided by email not later than 4:00 p.m. (Eastern) on December 21, 2026 to the United States Trustee, all creditors and all parties who have requested notice and their counsel. A hearing to approve the sale will be held before the Honorable Paul W. Bonapfel, United States Bankruptcy Judge, on January __, 2027 at __:__ _.m., in Courtroom 1401, United States Courthouse, 75 Ted Turner Drive SW, Atlanta, Georgia 30303, or by video as the Court directs.

Objections to the sale must be filed with the Court and served on the Debtor's counsel to be received by December 30, 2026 at 4:00 p.m. (Eastern).

Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures and the form asset purchase agreement may be obtained free of charge from Debtor's counsel or on the Debtor's website at www.storj.io/sale, or for a fee from the Court's PACER system.

**Any party with notice that fails to object by the applicable deadline may be deemed to have consented to the sale and barred from objecting**.

Debtor's counsel: Christopher R. Arthur, Spilman Thomas & Battle, PLLC, 300 Kanawha Blvd. E., Charleston, WV 25301, carthur@spilmanlaw.com; Gregory D. Ellis, Lamberth, Cifelli, Ellis & Nason, P.A., 6000 Lake Forrest Drive, N.W., Suite 290, Atlanta, GA 30328, gellis@lcenlaw.com. Chief Restructuring Officer: Shuja Ali, [email].

## EXHIBIT C

## MARKETING WORK PLAN

| **Day (from BP Order)** | **Activity** | **Responsible** | **Deliverable / evidence** |
|---|---|---|---|
| Filing of Motion | Teaser, form NDA and process letter sent to every party with prior 2026 contact (60+); sale page live on storj.io | CRO | Contact log entries; website capture |
| Day 1–3 | Wave 1 telephone and email follow-up with prior contacts; NDAs countersigned same day; data room access granted | CRO; counsel | NDA register; data-room user list |
| Day 1–5 | Target list expanded to ≥150 parties across six categories; publication in two trade titles and on distressed-asset marketplaces; social-media notice | CRO | Target list (under seal); tear sheets of publications |
| Day 3–10 | Wave 2 outreach to expanded list; direct approaches to top-20 customers and channel partners; notice to node operator mailing list and community forum | CRO; VP Engineering | Contact log; copies of notices |
| Day 10 | Form APA and buyer pro forma model released to data room | Counsel; CRO; accountants | Docket entries |
| Day 10–28 | Management presentations: two general sessions, private sessions on request; recorded session posted; weekly data-room activity reports | CRO; senior engineers | Attendance lists; recordings |
| Day 28 | Second round of publication; follow-up call to every party that opened the teaser without executing an NDA | CRO | Contact log |
| Day 46 | Bid Deadline, 4:00 p.m. ET; general sale objection deadline | CRO; counsel | Bid register |

| **Day (from BP Order)** | **Activity** | **Responsible** | **Deliverable / evidence** |
|---|---|---|---|
| Day 46 | Notice of Qualified Bidders and Baseline Bid | CRO; counsel | Notices |
| Day 47 | Auction; notice of Successful and Back-Up Bidders filed | CRO; counsel | Transcript; docket |
| Day 57 | Supplemental objection deadline | Counsel | Docket |
| Day 65 (approx.) | Sale Hearing; CRO declaration summarizing the marketing process (parties contacted by category, NDAs executed, data-room users, presentations held, bids received) | CRO; counsel | Declaration filed |
| By January 15, 2027 | Closing | All | Closing certificate |

# EXHIBIT D

## PROPOSED BIDDING PROCEDURES ORDER

[To be prepared by counsel after approval of the Court, incorporating the Bidding Procedures, the Sale Notice, the schedule, the reservation regarding the DIP Lender / Ward-Lamb dispute, and to ensure compliance with the Court's approved standard forms.]

Dated November 6, 2026

Respectfully Submitted,

STORJ LABS, INC.

By: */s/ Christopher R. Arthur*

Christopher R. Arthur (WVSB #9192)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Blvd. E.
Charleston, WV 25301
(304) 720-4090 *(Phone)*
carthur@spilmanlaw.com
***Counsel for Storj, Debtor-in possession***

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In RE:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 26-62642-PWB** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have on November 6, 2026, caused a copy of the *Debtor Storj Labs Inc.'s Motion for Entry of (1) an Order Approving Bidding Procedures for the Sale of Debtor's Object Storage Business, (B) Approving the Form and Manner of Notice of the Sale, Auction and Sale Hearing, and (C) Scheduling an Auction and Sale Hearing to Approve the Sale; and (2) an Order Authorizing the Sale Free and Clear of Liens, Claims, Interests and Encumbrances* to be served via electronic mail on the following parties set forth below at the addresses shown:

jfitzgerald_tuckerlaw.com <jfitzgerald@tuckerlaw.com>;
Beth Harrill <Beth_Harrill@ganb.uscourts.gov>;
Martin Sheehan <Martin@Msheehanlaw.net>;
Bruce M. Jacobs <BJacobs@spilmanlaw.com>;
selliott@lewisgianola.com <selliott@lewisgianola.com>;
bmanne_tuckerlaw.com <BMANNE@TUCKERLAW.COM>;
McCartney, Lauren <lmccartney@tuckerlaw.com>;
mthomas_tuckerlaw.com <mthomas@tuckerlaw.com>;
rfranks@cdkrlaw.com <rfranks@cdkrlaw.com>;
kpallen@duanemorris.com<kpallen@duanemorris.com>
Alan Hinderleider <alan.hinderleider@usdoj.gov>;
darryl.laddin_agg.com <Darryl.Laddin@AGG.com>;
Ellis, Andrew H. <andrew.ellis@agg.com>;
Sheehan Paralegal <paralegal@Msheehanlaw.net>;
Gregory Ellis <gellis@lcenlaw.com>

I further certify that on this day I caused a copy of a copy of the **Debtor's Reply in Support of Motion to Authorize Post-Petition Financing and Use of Cash Collateral, and Debtor's Expedited Motion for Entry of an Order (A) Establishing Bidding and Sales Procedures, (B) Scheduling Final Deadlines to Submit Bids, and (C) Approving the Form and Manner of Notice Thereof** to be served via United States First Class Mail, with adequate postage prepaid, on the following parties set forth below:

Kevin P Allen
Duane Morris LLP
625 Liberty Avenue Suite 1000
Pittsburgh, PA 15222-3112

George A. R. Balchunas
1500 One PPG Place
Pittsburgh, PA 15222

James H. Billingsley
Duane Morris LLP
200 Crescent Court, Suite 900 Dallas,
TX 75201

Mark Harvilla
142 S El Molino Ave., Apt 2
Pasadena, CA 91101

Steven D. Haupt
7127 Warner Rd.
Saline, MI 48176

Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Nikhil Jaion
3016 E. Colorado Blvd. #5216
Pasadena, CA 91107

Jennifer Johnson
146 Osner Dr.
Atlanta, GA 30342

Helen Emmi Karin
5052 N Sandres Rd
Tucson, AZ 85743

Darrly S. Laddin, Esquire
Arnall Golden Gregory LLP
17117th Street NW
Suite 2100
Atlanta, Georgia 30363

Bryan Mangelson
1133 N 1190 E
American Fork, UT 84003 18

Dominick Marino
15941 E. Sunflower DR.
Fountain Hills, AZ 85268

Lauren Hutchins McCartney
Tucker Arensberg, P.C.
United Center 500 Virginia Street East Ste 1050
Charleston, WV 25301

Damein Morgan
2896 E Christopher Dr
Fresno, CA 93720

Goran Mrkonjic
Bukereska 14
1100 Beograd
Serbia

Robert L Nistendirk
Woomer, Nistendirk & Associates, PLLC
231 Capitol Street Ste 400
Charleston, WV 25301

Kimberly Pashel
746 Hillmont Ave.
Decatur, GA 30030

David R. Pogue
Carey Douglas Kessler & Ruby PLLC
707 Virginia Street East, Suite 901
Charleston, WV 25301

Christopher Rocco
610 N. Wagner Rd
Ann Arbor, MI 48103

Martin P. Sheehan
Sheehan & Associates, P.L.L.C. 19
1140 Main St., Ste 333 Wheeling, WV 26003

Donald Shott, Jr.
2568 S Park St.
Salt Lake City, Utah 84106

Andrea Steinke
3063 Quartz Hill Rd
Redding, CA 967003

Maribeth Thomas
Tucker Arensberg, P.C.
1500 One PPG Place
Pittsburgh, PA 15222

Matthew Vicari
125 Ocean Pkwy
Apt 3F
Brooklyn, NY 11218

Jeremy Wharton
2767 Woodspring Forest Drive
Kingwood, TX 77345

Trisha Winter
35915 Fredericksburg Rd.
Farmington Hills, MI 48331

*/s/ Christopher R. Arthur*
Christopher R. Arthur (WVSB #9192)
Admitted *Pro Hac Vice*