**IT IS ORDERED as set forth below:**

**Date: November 9, 2026**

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In RE:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 26-62642-PWB** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

**AGREED ORDER RESOLVING OBJECTIONS AND GRANTING MOTION FOR ENTRY OF AN ORDER ESTABLISHING BIDDING AND SALE PROCEDURES, (B) SCHEDULING FINAL DEADLINE TO SUBMIT BIDS, AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

Pursuant to sections 105, 363, 365 and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Storj Labs, Inc.'s debtor-in-possession in the above-captioned case (the Debtor") filed a motion for entry of an order: (A) Establishing Bidding and Sale Procedures, (B) Scheduling Final Deadline to Submit Bids, and (C) Approving the Form and Manner of Notice Thereof, to facilitate Debtor's sale of two non-core assets identified as Valdi and Object Mount which are more particularly described below, free and clear of all liens, claims, interests, and

encumbrances pursuant to 11 U.S.C. § 363(b) and 363(f), with valid liens attaching to proceeds in the same order of priority; and (D) granting related relief, including an expedited hearing ("Sale Motion"). Doc. No. 189. Michael Ward and Robert Lamb in their capacities as collateral agents for certain former Hedgehog Invest Limited shareholders objected to the Sale Motion ("Collateral Agents"). [Doc. No.197].

Having heard the statements of counsel in support of the relief requested at the hearing before the Court on October 29, 2026 ("Hearing") and agreement resolving Collateral Agent's objections, the Court having found and concluded that (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (iii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iv) notice of the Motion was sufficient under the circumstances, (iv) the legal and factual bases set forth in the Motion and at the Hearing established just cause for the relief granted herein, (v) Debtor and Collateral Agents reaching an agreement resolving the objections, and this Court having determined that granting the relief requested in the Motion as set forth herein is in the best interests of the Debtor, its estate and its creditors; and after due deliberation and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED THAT:**

1. The Motion is **GRANTED** as provided herein.

2. The following bidding procedures are hereby approved:

## I. ASSETS TO BE SOLD

The Debtor shall have the right, consistent with the procedures set forth herein and subject to final approval by the Court, to sell (the "Sale" (the "Valdi Asset" and "Object Mount Asset" , as defined below, and collectively the "<u>Assets</u>") consisting of the following:

A. Valdi.ai: The Debtor's division identified as Valdi.ai "Valdi (the "Valdi Asset".

The Debtor explains that the Valdi Asset is a web application that provides an online marketplace to connect customers who need access to Graphics Processing Units (GPUs, specialized electronic chips) on an on- demand rental basis. Valdi connects buyers who wish to rent GPUs to suppliers who have GPUs to rent. The software operates as a 2-sided marketplace for GPUs. Valdi assists suppliers (businesses and datacenters with underutilized capacity) to monetize their GPUs by listing them on the Valdi marketplace. Listings are generally anonymized giving the listing entity freedom to price idle resources more aggressively that retail resources purchased directly from the entity. Buyers also can access hard-to-find GPUs on-demand for short term use via a pay-as-you-go model, or as reserve capacity with prepaid or flexible terms.

The sale of the Valdi Asset includes the following:

- Intellectual property: the Valdi software platform, source code and object code, proprietary algorithms, copyrights, trade secrets, and all related documentation and technical specifications;
- Brand: the "Valdi" name, trademarks, service marks, trade names, logos, and associated brand and goodwill;
- Digital properties: domain names, websites (including valdi.ai), and social media handles and accounts;
- Commercial contacts: vendor, supplier, reseller, partner, and hosting/infrastructure agreements used in the Business (subject to consents);
- Inbound licenses: third-party software and technology licenses used in the Business (subject to consents);
- Cloud infrastructure: cloud accounts, environments, and configurations (e.g., AWS/Azure/GCP), API keys, credentials, and deployment/DevOps tooling used in the Business;
- Books and records: records and files relating to the ValdiAsset, customers, and operation of the Business (originals or copies);

- Marketing assets: sales, product, and marketing collateral and materials;
- Prepaids: prepaid expenses, deposits, and advance payments relating to Valdi; and
- Goodwill: all goodwill and going-concern value of Valdi.

B. Object Mount: The Debtor's division identified as "Object Mount" (the "Object Mount Asset").

The Debtor explains that the Object Mount Asset is client software for Mac, Linux and Windows that enables mounting S3 compatible object storage as a local drive, including full POSIX support. The software enables a range of use cases, including media and entertainment workflows, backup, and data streaming for AI/ML workloads. The software includes the ability to accelerate performance via caching and preload logic.

The sale of Object Mount Asset includes the following:

- Intellectual property: the Object Mount software, source code and object code, patents and patent applications, copyrights, trade secrets, and all related documentation and technical specifications. The specific patents included are:
- US 2025/0272265 A1 – Improvements in and Relating to Object-Based Storage
- EP 4,535,182 A1 – Computer-Implemented Method for Prefetching Data
- EP 4,535,183 A1 – Improvements in and Relating to File Storage
- Brand 1: the "Object Mount" name, trademarks, service marks, trade names, logos, and associated brand and goodwill;
- Brand 2: the "airleap" brand including the airleap.com domain;
- Digital properties: domain names, websites (including objectmount.com);
- Inbound licenses: third-party software and technology licenses used by Object Mount (subject to consents);

- Cloud infrastructure: cloud accounts, environments, and configurations (e.g., AWS/Azure/GCP), API keys, credentials, and deployment/DevOps tooling used by Object Mount;

- Books and records: records and files relating to the Object Mount Asset;

- Marketing assets: sales, product, and marketing collateral and materials;

- Ancillary rights: rights under warranties, guarantees, indemnities, and confidentiality/non-compete covenants relating to the Object Mount Asset, and claims and causes of action relating to the Object Mount Assetor assumed liabilities for post-Closing periods; and

- Goodwill: all goodwill and going-concern value of Object Mount Asset.

Estimated Value: **Schedule A** estimates the fair market value of the assets as follows:

A. Valdi Asset: $25,000.00.

B. Object Mount Asset: $350,000.00.

## II. THE SALE PROCESS AND RELATED ITEMS

### A. The Proposed Sale Transactions and Marketing Process

Debtor determined that the best opportunity that creditors may have to recover value from the bankruptcy estate is through the sale of the Debtor's non-core assets.

Prior to the filing of this Motion, Debtor privately solicited interest from individuals and entities that Debtor identified as prospective purchasers of Debtor's Property as a going concern. The Debtor contends that its pre-petition outreach began in mid 2026 and produced the indication of interest in Storj Labs and the non-core assets referenced below and a master list of more than 40 prospective purchasers, investors and industry contacts (combining parties that executed non-disclosure agreements and parties that expressed interest in the Debtor's mid 2026 funding process), which the Debtor has continued to work since the Petition Date. Debtor is currently marketing the business assets to potential purchasers that it has identified.

Beginning immediately upon entry of this Order and continuing through the Bid Deadline of November 17, 2026, a public marketing period of approximately two and half weeks that follows what Debtor states was roughly 12 weeks of private solicitation since filing, the Debtor will broaden that marketing to the public channels and targeted outreach described in the Sales Process below, so that each Asset is exposed to the industry-specific buyers most likely to ascribe strategic value to it: GPU-cloud and datacenter operators, compute marketplaces and AI-infrastructure companies for Valdi, and S3-compatible storage vendors, media-and-entertainment workflow and backup software companies and AI/ML data-pipeline vendors for Object Mount, in the United States, Europe, the Middle East and Asia.

### B. The Need for an Expedited Notice and Sale Process

The Debtor asserts that it filed this Sale Motion on an expedited basis to ensure the Debtor is able to complete the sale of the Assets in a timely manner. Debtor states that it needs to sell the Assets in a timely manner as these assets do not generate sufficient revenues to offset the expenses of operating these assets, and for customers who have paid for the services and products, the Debtor does not have the necessary staff to service and maintain the product. Per agreement with Collateral Agents, Debtor will escrow all proceeds from the sales of the Assets and allow parties to assert claims to distribution of those proceeds to be determined by the Court.

### C. The Deadlines Contained in the Bidding Procedures Are Reasonable and Will Provide an Adequate Opportunity for Interested Parties to Formulate and Submit Bids

In formulating the procedures and time periods, the Debtor asserts that it had two principal objectives: (a) providing adequate and appropriate notice to parties in interest and to potential purchasers; and (b) efficiently selling the Assets. The Debtor believes the Bidding Procedures achieve both objectives under the facts and circumstances of this Chapter 11 Case. In the exercise of its business

judgment, Debtor believes the parties who may have an interest in bidding are among its creditors, investors, and key individuals/entities who function in the industries relating to the two assets being sold, together with strategic buyers in the GPU-compute, data-storage, media-workflow and AI/ML-infrastructure industries in the United States, Europe, the Middle East and Asia, whom the Debtor will reach through the no-cost and nominal-cost public channels and direct outreach identified in the Sales Process below.

Thus, the Debtor assures that the timeline in the Bidding Procedures will not prevent any party interested and capable of purchasing the Assets from conducting due diligence and submitting a bid. The Debtor identified and communicated with potential purchasers who may have an interest in purchasing the technology identified above. Concerning the Object Mount Asset, the Debtor received an offer to purchase the Object Mount Asset shortly after the filing of bankruptcy. Due to Chapter 11, the Debtor communicated to that potential purchaser that it will offer Object Mount Asset through the bankruptcy process, including an approved sales process. The Debtor also communicated that it will undertake commercially reasonable marketing efforts, including advertising through online platforms, direct outreach to potential buyers, email marketing, and other customary methods to sell the assets, and the specific platforms, communities and publications the Debtor will use, and the timetable for doing so, are set out in the Sales Process below.

Debtor proposed the following sale process:

<u>Sales Process</u>

- Create a standard bid and transaction structure package for potential buyers, including
    - Presentation featuring Valdi Asset
    - Document listing out the assets for sale for Valdi Asset
    - Presentation featuring Object Mount Asset
    - Document listing out the assets for sale for Object Mount Asset
    - Template for expected offer format (cash, terms, timing to close sale once Court approves sale)

- Advertise separately, sale of Valdi Asset and Object Mount Asset on Storj website through a dedicated sale page at storj.io (posting this Order, the sale notice, the bid package and the instructions for executing an NDA and requesting data-room access) and on the Debtor's existing social-media and community channels (LinkedIn, X, the Storj community forum and Discord), each at no cost to the estate; list the Assets, where listing is free or the listing fee is nominal (not to exceed $1,000 in the aggregate without further order of the Court), on technology-asset and business-for-sale marketplaces including Acquire.com, Flippa, BusinessesForSale.com and DealStream; and circulate the sale notice at no cost to the restructuring and distressed-asset networks that track Chapter 11 sales, including Octus (formerly Reorg), Debtwire, The Deal, the Turnaround Management Association (TMA), the American Bankruptcy Institute (ABI), INSOL International and R3 (UK), and to the Global Restructuring Review and Mergermarket deal desks;
- Send emails to all potential buyers who had previously expressed interest in acquiring these assets from Storj Labs; conduct direct outreach, by email and telephone, to a targeted list of strategic buyers for each Asset (GPU-cloud and datacenter operators, compute marketplaces and AI-infrastructure companies for Valdi; S3-compatible storage vendors, media-and-entertainment workflow and backup software companies and AI/ML data-infrastructure companies for Object Mount Asset), including international buyers identified through the Debtor's existing relationships in the United Kingdom, the Gulf Cooperation Council states and Asia; and notify the Debtor's customers, node operators and token-holder community of the sale through the Debtor's existing newsletters and community channels, with follow-up to every party that requests the bid package;
- Post the sale notice, where no fee is charged, in the online technical communities in which likely buyers of each Asset participate (for Valdi Asset: Hacker News, the r/LocalLLaMA and r/MachineLearning communities and GPU-cloud operator groups on LinkedIn; for Object Mount Asset: Hacker News, the r/DataHoarder and r/selfhosted communities, and media-and-entertainment and storage-industry groups on LinkedIn), and issue a short press release through the Debtor's existing press contacts to industry publications including Data Center Dynamics, Data Center Knowledge, Blockworks, CoinDesk, The Block and DealStreetAsia, each at no cost to the estate;
- Publish all marketing postings within three (3) business days of entry of this Order, deliver the bid package to any party that executes an NDA within one (1) business day of request, and maintain a log of all parties contacted, all NDAs executed and all data-room users, a summary of which the Debtor will file with its motion for final approval of the sale as evidence of the marketing effort;
- Provide access to contract documents and due diligence via an online a data-room and track all those who gain access, after they sign a NDA;
- Schedule a 1.5 hour online call (one for Valdi Asset and separately one for Object Mount Asset) for potential, qualified bidders to join where the Debtor, including its key engineers, to go through the product and make a technical resource available to demonstrate the product The calls will be held no later than November 10, 2026, will be recorded and the recordings posted to the data room for bidders unable to attend live, and the Debtor will offer follow-up one-on-one technical sessions with its engineers on request so that no bidder is deterred from bidding by unanswered diligence questions.

The sale will be conducted by allowing bidders to submit bids, including providing proof of funds and ability to close the transaction, until the close of business on November 17, 2026, and these bids will be considered binding (the "Bid Deadline").

To be eligible for the auction, a bid must (i) be in writing on the Debtor's template offer format, identify the Asset(s) sought and any proposed variations to the Debtor's form of bill of sale, (ii) state a purchase price in cash with no financing, due-diligence or board-approval contingency, (iii) be accompanied by proof of funds, (iv) remain irrevocable until the earlier of the closing of a sale of the applicable Asset or [thirty (30)] days after the auction, and (v) confirm that the bidder has not colluded with any other bidder (each such bid, a "Qualified Bid").

The Debtor will inform all bidders in the bid package that the auction will be limited to the top three bidders for each Asset, so that bidders are encouraged to submit their best offer by the Bid Deadline. The top three bidders will be notified and asked to provide a good-faith deposit equal to ten percent (10%) of the bid delivered to Debtor's counsel's IOLTA account, which will be returned to every bidder other than the Successful Bidder and the Next-Highest Bidder within three (3) business days after the auction. These three bidders will then be invited to an auction, which will occur on November 20, 2026 at 1:00 p.m. (all times stated herein are Eastern Standard Time) via Zoom which will be set up by Debtor's counsel.

On or before November 18, 2026 at 1:00 p.m., Debtor's counsel will communicate the identities via confidential disclosure to the Collateral Agents. If the Collateral Agents have any objection to the three designated top bidders, then they will notify Debtor's attorney by 10:00 a.m. on November 20, 2026. If the Debtor and Collateral Agent cannot resolve any objection concerning one of the designated top three bidders, then the Debtor will move the Court for an expedited hearing, and postpone the auction until the Court rules on the objection.

If fewer than three Qualified Bids are received for an Asset, all Qualified Bidders for that Asset will be invited to the auction, and if only one Qualified Bid is received for an Asset the Debtor may, in its business judgment and after consultation with the Collateral Agents, designate it the Successful Bid without an auction. If a designated top-three bidder withdraws or is disqualified before the auction, the next-highest Qualified Bidder for that Asset will be invited in its place. The auction for each Asset will be conducted as an open, ascending-bid auction in rounds: the Debtor will announce the opening bid (the highest Qualified Bid for that Asset); each subsequent bid must exceed the then-highest bid by a minimum increment of $[1,000] for Valdi Asset and $[5,000] for Object Mount Asset, which the Debtor may reduce in later rounds to keep bidding active; bidders will have [ten (10)] minutes to respond in each round; and bidding will continue until no bidder is willing to bid further. Bidders may bid on either or both Assets, and the Debtor may accept a combined bid for both Assets if its aggregate value exceeds the sum of the best separate bids.

The Debtor, in consultation with its counsel and the Collateral Agents, will determine the highest or otherwise best bid taking into account, in addition to price, the certainty and speed of closing, any proposed modifications to the form of bill of sale, and any assumption of customer or vendor obligations. The second-highest bid at the close of the auction will be designated the Next-Highest Bid and will remain binding as a back-up bid on the terms set out above. Debtor’s counsel will keep a written record of all bids made at the auction, and the auction will be recorded.

<u>Submission of Bids</u>

- Any potential bidders will be instructed to submit their bids in writing to the Debtor’s lawyer, Christopher R. Arthur at the following: Christopher R. Arthur, Spilman Thomas & Battle, PLLC, 300 Kanawha Boulvevard, East, Charleston, West Virginia 25321. Bids also can be submitted via e-mail to carthur@spilmanllaw.com. Those bids will remain sealed until after 4:00 pm est. on November 17, 2026. After the bid process is closed, and not later than 1:00 p.m. on November 18, 2026, Mr. Arthur will communicate the top three bids and schedule an auction among the top three bidders to occur on November 20, 2026 at 1:00 p.m. via Zoom. Mr. Arthur will communicate the winning bidder and the Next-Highest Bidder after the

auction by filing a motion seeking final approval from the Court. Notices of the winning bidder and the Next-Highest Bidder and motion for final approval of the sale will be served by e-mail to creditors and all parties in interest who have appeared in the case and consented to electronic service or for which Debtor has an e-mail address and all parties of interest, and e-mail communications to any parties who submitted a bid. Debtor will also serve the Proposed Notice by regular postal mail on those creditors and parties in interest who have not consented to electronic service.

- Net proceeds shall be held in escrow in the Debtor's counsel's IOLTA account pending further order of this Court.

## III. BASIS FOR RELIEF REQUESTED

Section 363 of the Bankruptcy Code authorizes a trustee "after notice and a hearing … to use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105 of the Bankruptcy Code grants to the Court the authority to "issue any order, process or judgment necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property under Section 363(b) free and clear of any interest in such property if, among other things: (i) the price at which the property is to be sold is greater than the aggregate of the liens on such property; (ii) the interests are subject to a bona fide dispute; (iii) the entities asserting liens on the property consent to its sale; or (iv) the entities asserting liens on the property could be compelled in a legal or equitable proceeding to accept a money satisfaction of their interests. 11 U.S.C. § 363(f). One or more of these standards is met.

Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See, e.g.*, *In re EaglePicher Holdings, Inc.*, 2005 WL 4030132 (Bankr. S.D. Ohio 2005); *In re*

*Martin*, 91 F.3d 389, 395 (3rd Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

In light of circumstances that precipitated the commencement of this Chapter 11 Case, the Debtor has proposed a fair and open process for achieving the objective of obtaining the highest or best offer for the Assets. Accordingly, the proposed bidding procedures will allow the highest or best bidder to purchase the Assets, thereby maximizing the return to the Debtor's estate.

In addition, all creditors and parties-in-interest will receive adequate notice as set forth herein. Such notice is reasonably calculated to provide timely and adequate notice to the Debtor's known creditor constituencies, those parties most interested in this Chapter 11 Case, those parties potentially interested in bidding on the Assets, and others whose interests are potentially implicated by a proposed sale.

For each of the foregoing reasons, the Debtor, in its business judgment, believes that a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, is in the best interest of the Debtor, its estate, creditors and other parties in interest. Accordingly, consummating the Sale as soon as possible is in the best interests of the Debtor and its creditors.

**IV. Approval of the Sale Free and Clear of All Liens, Claims, and Encumbrances Pursuant to Bankruptcy Code Section 363(f)**

The Debtor also requested that the Sale Order provide that the sale of the Assets is free and clear of any interest held by any third party in any of the assets to be sold. Specifically, it is contemplated that upon the closing, the successful bidder(s) will take title to and possession of the Assets, free and clear of all liens, claims, interests, and encumbrances.

Section 363 of the Bankruptcy Code authorizes the sale of property to be free and clear of interest in such property held by an entity.

Liens, including super priority lien held by the DIP Lender Inveniam, will attach to the sales proceeds with the same validity and priority that exists under the DIP Agreement, federal bankruptcy laws, and state law pursuant to section 363(e) of the Bankruptcy Code.

The sale of the Assets satisfies section 363(f) of the Bankruptcy Code because any entities holding liens, claims, interests, or encumbrances against the Assets will have received notice of the Sale. All parties in interest will be given sufficient opportunity to object to the relief requested herein and any such entity that does not object to the Sale of the Purchased Assets should be deemed to have consented.

Thus, the sale of the Assets is appropriately free and clear of all liens, claims, interests, or encumbrances pursuant to section 363(f) of the Bankruptcy Code.

**V. The Proposed Notice of the Sale is Adequate and Appropriate**

Under Bankruptcy Rule 2002(c), notice of the Sale must include the final date, time, and instructions to place a bid to purchase the assets and the date, time and place of the Auction. Within three (3) business days after entry of the Order approving the bidding procedures, the Debtor will serve notice of the auction, the Sale Hearing (defined below) to be conducted after auction concludes and the Objection deadline to confirmation of the sale and to any other matter to be considered in connection with confirmation of the sale. Notice will be served by e-mail on all parties in interest, all creditors listed on the Debtor's Schedules, all parties who have appeared in the case, and the United States Trustee. Debtor will serve the Proposed Notice by postal mail only on those creditors and parties in interest who have not consented to electronic service.

As Bankruptcy Rule 2002(c) requires, the Notice will include (among other things) the following: (a) the proposed date, time, and place to submit a bid to purchase the asset(s); (b) notice that the top three bidders will be notified and auction will occur on November 20, 2026 to be held via Zoom

and monitored by Mr. Arthur; (c) information about the Assets; (d) the web address of the Debtor's sale page and the instructions for executing an NDA and obtaining the bid package and data-room access; (e) the bid requirements and auction procedures summarized above; (f) the date, time and place of the Sale Hearing to confirm the sale after the auction; and (g) the Objection Deadline for filing any objections to the proposed confirmation of the sale. The methods of notice described herein comply fully with Bankruptcy Rule 2002 and constitute good and adequate notice of the proposed sale of the Assets.

Debtor submits that the process for which Debtor is seeking approval will ensure that the Debtor and the prospective purchaser have proceeded in good faith and requests this Court to provide any prospective purchaser with the protections of § 363(m) of the Bankruptcy Code.

Debtor therefore seeks the protections afforded to a purchaser with regard to sale transactions under § 363(m) of the Bankruptcy Code, which provides that the reversal or modification on appeal of an authorization of a sale or lease of property does not affect the validity of the sale or lease under such authorization to an entity that purchased or leased the property in good faith, which the Court will consider at the Sale Hearing to be held after the auction is concluded.

## VI. Waiver of Bankruptcy Rules 6004(h) and 6006(d)

The Debtor requests that, upon entry of a Sale Order, the Court waive the 14-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d). The waiver of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d) will allow any Sale Transaction to close as soon as possible and prevent further delay in the administration of these cases. In addition, because the Assets impose holding costs on the Debtor during their period of ownership and control, any delay in closing may diminish the Debtor's estate to the detriment of creditors. Thus, the Debtor respectfully submits that a waiver of the

14-day stay requirements contained in Bankruptcy Rules 6004(h) and 6006(d) is appropriate under the circumstances. Absent objection, the Court will waive the 14-day stay as part of an Order confirming the sale.

**VII. Selection of the Successful Bid**

Immediately after the conclusion of the bid deadline, the Debtor will notify the top three bidders that an auction will occur on November 20, 2026 at 1:00 p.m., and the opening bid at the auction will begin with the highest bid of the top three bidders. The Debtor also will notify the Collateral Agents of the three top bidders giving them an opportunity to object prior to the auction. After the conclusion of the auction, the Debtor will notify the Court of the winning bidder and the Next-Highest Bidder, consistent with these bid procedures, which bid(s) constitutes the highest or otherwise best bid(s) (the "Successful Bid") to purchase the subject Assets. Unless the Bankruptcy Court orders otherwise, the Debtor shall not consider any bids or subsequent bids submitted after the conclusion of the auction to submit a bid.

The Debtor may seek approval of any Successful Bid(s) and any Next-Highest Bid(s) at the Sale Hearing . If for any reason the highest bidder fails to timely consummate the purchase of the Assets, the Debtor may seek to consummate the Sale(s) based on the Next-Highest Bid(s) without further approval by the Court.

The Debtor's presentation to the Bankruptcy Court for approval of a selected Bid(s) as a Successful Bid(s) does not constitute the Debtor's acceptance of such Bid(s). The Debtor will have accepted the Successful Bid(s) only when such Successful Bid(s) has been approved by the Bankruptcy Court at the Sale Hearing. The Debtor intends to close the Sale(s) within fourteen (14) days after the Sale(s) is approved by the Bankruptcy Court, unless another time or date, or both, are agreed to in writing by the Debtor and the Successful Bidder (the "Closing Date"), or upon

direction from the Bankruptcy Court.

**VIII. Notice of Successful Bid, Next-Highest Bid and Objection Deadline**

On November 20, 2026, the Debtor shall file a notice with the Court identifying the Successful Bidder and the Next-Highest Bidder.

A hearing to approve a sale(s) based on the Successful Bid(s) (the "Sale Hearing") shall take place on December 3, 2026, **at 10:00 a.m. Eastern Time** in Courtroom 1401, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which must be attended in person, unless the Court orders otherwise.

**All objections to the proposed Sale(s) must be filed on or before November 30, 2026.**

**IX. Notice of Bid Procedures, Auction, and Sale Hearing**

Within one(1) business day following the entry of this Order, the Debtor will serve a copy of this Order to: (i) all potential purchasers previously identified or solicited by the Debtor and its professionals; (ii) the Office of the United States Trustee; (iii) all parties that are known to possess or assert a lien, claim, encumbrance, or interest in or upon any of the Assets; and (iv) all parties on the most current master service list filed in this case. Such notice shall be sufficient and proper notice of the sale with respect to known interested parties and shall file a certificate of service certifying such service within three (3) business days thereafter.

**X. Report of Sale(s)**

Within three (3) business days of the closing of the Sale(s), the Debtor will file a Notice with the Court confirming that consummation of the Sale(s) occurred, identifying the date of closing, the successful purchaser(s) and the sale price actually paid.

**XI. Retain Jurisdiction**

The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

**Prepared and presented by:**

SPILMAN THOMAS & BATTLE PLLC
*/s/ Christopher R. Arthur*
Christopher R. Arthur (WVSB #9192) (*Admitted pro hac vice*)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Blvd. E.
Charleston, WV 25301
(304) 720-4090 *(Phone)*
carthur@spilmanlaw.com
-and-
LAMBERTH, CIFELLI,
ELLIS & NASON, P.A.
*Local Counsel for Storj Labs, Inc.*

By: */s/ Gregory D. Ellis*
Gregory D. Ellis
Georgia Bar No. 245310
6000 Lake Forrest Drive, N.W., Ste. 290
Atlanta, GA 30328
gellis@lcenlaw.com
(404) 262-7373
***Counsel for Storj, Debtor-in possession***

Agreed to:

TUCKER ARENSBERG, P.C.
*/s/ Judith K. Fitzgerald*
Judith K. Fitzgerald, Esq. (PA ID No. 18110)
*Admitted pro hac vice*

Beverly Weiss Manne, Esq. (PA ID No. 34545)
*Admitted pro hac vice*
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
jfitzgerald@tuckerlaw.com
bmanne@tuckerlaw.com
- and -
ARNALL GOLDEN GREGORY LLP
Darryl S. Laddin, Esq.
Georgia Bar No. 460793
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363-1031
Telephone: (404) 873-8120
*Counsel for Michael Ward and Robert Lamb, in their capacity as Collateral Agents for the Pledgees*