**IT IS ORDERED as set forth below:**

**Date: November 13, 2026**

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In RE:** | ) | |
| | ) | |
| **STORJ LABS INC.,** | ) | **Case No. 26-62642-PWB** |
| | ) | |
| **Debtor.** | ) | **Chapter 11** |
| | ) | |

**AGREED ORDER RESOLVING OBJECTION AND ENTRY OF FINAL ORDER AUTHORIZING POST-PETITION FINANCING AND USE OF CASH COLLATERAL**

On October 29, 2026, the Court held a hearing on Storj Labs, Inc., debtor in possession in the above-captioned case (the "Debtor") "Emergency Motion to Authorize Post-Petition Financing and Use of Cash Collateral and Schedule a Final Hearing" (hereinafter ("Emergency Motion") [ECF

No. 14]. Pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2, and 9013-1 of the United States Bankruptcy Court for the Northern District of Georgia Local Rules (the "Local Rules"), the Debtor moved this Court for entry of a final order (the "Final Order," and together with the Interim Order, the "DIP Orders"), (i) authorizing Debtor to obtain post-petition financing from Inveniam Capital Partners, Inc., a Delaware Corporation ("DIP Lender"), on the terms described herein and in "Debtor-in-Possession Credit Agreement", and (ii) authorizing Debtor to use cash collateral. Michael Ward and Robert Lamb in their capacities as collateral agents for certain former Hedgehog Invest Limited shareholders ("Collateral Agents"), filed on October 22, 2026 "Objection of Michael Ward and Robert Lamb to Debtor's Motion to Authorize Post-Petition Financing and Use of Cash Collateral". Doc. No. 196. Debtor and Collateral Agents reached an agreement resolving the Collateral Agents' objections. No other party objected to the entry of the Final Order.

In support of entry of the Final Order, the Debtor represents as follows:

1. The United States Bankruptcy Court for the Northern District of West Virginia ("Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. Debtor confirmed its consent, under Rule 7008 of the Federal Rules of Bankruptcy Procedure, to the entry of a final order by the Court in connection with the Emergency Motion if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the requested relief are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rules 2002-1, 4001-2, and 9013-1.

5. The Debtor sought approval from the Court for the following relief:

a. DIP Credit Agreement. Authorizing approval of transactions pursuant to a credit agreement between Debtor and its parent, Inveniam Capital Partners, Inc. (the "DIP Credit Agreement") by which Debtor obtained secured post-petition financing on a superpriority basis consisting of $260,000 subject to certain terms and conditions including but not limited to payment of interest at the rate of 18% per annum (the "DIP Loan");

b. DIP Documents. Authorizing Debtor to execute and deliver the DIP Credit Agreement and any other agreements, instruments, notes, pledge agreements, guarantees, control agreements, and other Loan Documents (as defined in the DIP Credit Agreement) (as amended, restated, amended and restated, supplemented, waived, and/or modified from time to time, and collectively with the DIP Credit Agreement, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

c. Superpriority Administrative Priority. Granting to the DIP Lender on account of the DIP Documents (as described in the DIP Credit Agreement, the "Postpetition Debt") superpriority administrative expense claim status for the DIP Loan in these Chapter 11 Cases, subject only to the Carve Out as outlined in the DIP Credit Agreement;

d. Priority Liens. Granting to the DIP Lender automatically perfected first priority security interests in and liens (the "DIP Liens") on all of the real and personal property, whether now existing or hereafter acquired or arising, tangible or intangible, of Debtor as further described in the DIP Documents and the Interim Order (collectively, the "DIP Collateral"), including all property

constituting "cash collateral" as defined in section 363 of the Bankruptcy Code ("Cash Collateral"), which DIP Liens shall be senior to all other liens and security interests in or against Debtor or Debtor's assets or properties except for the Prepetition Liens (solely to the extent such Prepetition Liens were validly attached and perfected prior to the Petition Date), in which case the DIP Liens shall be junior to all such validly attached and perfected Prepetition Liens as of the Petition Date, and in all cases, such DIP Liens shall be subject to the Carve Out;

e. Use of Proceeds. Authorizing Debtor to use the proceeds of the DIP Loan as permitted by the DIP Documents, including, among other things, for (i) working capital and other general corporate purposes, including expenses to continue and complete ongoing development and infrastructure projects, (ii) payment of costs and expenses, including professional fees, of administering these Chapter 11 Cases, and (iii) paying other Court-approved expenses, in each case as set forth in the Interim Budget attached to the Emergency Motion as Exhibit C or Budget, as applicable (each as defined in the DIP Credit Agreement) or otherwise approved in advance and in writing by the DIP Lender;

f. Payment of Postpetition Debt. Authorizing and directing Debtor to pay the principal, interest, fees, expenses, and other amounts payable under the DIP Documents as such become due and payable, including the reasonable fees and disbursements of the DIP Lender's attorneys, advisors, accountants, and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

g. Modification of the Automatic Stay. Vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and the DIP Orders; and

h. Cash Collateral. Authorizing Debtor to use the Cash Collateral (as defined in the DIP Documents) and any other assets, on the terms and subject to the conditions set forth in the DIP Documents and in the DIP Orders.

6. The Collateral Agents objected as follows:

i. DIP Credit Agreement failed to define the word "Obligations" when it states that the Debtor promises "to pay to the order of [Inveniam] the principal amount of the DIP Loan on the Maturity Date, plus all accrued interest, fees, and ***other Obligations then outstanding in full in cash***." Doc No. 196, p. 3.

ii. "DIP Lender may 'credit bid' up to the full amount of all Obligations in order to purchase (either directly or through one or more acquisition vehicles) all or any portion of the DIP Collateral. *Id*.

iii. DIP Credit Agreement provides that "[p]roceeds from Storj selling any assts [sic] shall be credited as follows: 67% applied to Storj's operations, and 33% paid to DIP Lender towards the DIP Financing obligation." *Id*. at 4.

iv. Debtor did not provide evidentiary basis to support that Debtor "sought to obtain financing on a non-priming basis" but has been "unable to do so" and "engaged in good-faith negotiations and assessed its options for postpetition financing", or that the DIP Agreement "is the product of these negotiations between Debtor and the DIP Lender, both of whom are represented by their own experienced counsel and resulted in Debtor securing the most favorable terms possible under the circumstances." *Id*. at 5.

7. Addressing the Objections, the Debtor agrees to the following:

i. Debtor clarifies that the phrase "other Obligations then outstanding in full in cash" relates exclusively to the DIP Loan which totals $260,000, plus accrued interest;

ii. Debtor confirms that the DIP Lender is not entitled to credit bid, and the Debtor agrees that any orders seeking approval of the sales procedures will reflect that credit bidding is not permitted;

iii. Debtor agrees to escrow with its counsel all proceeds from all sales of its assets, interests and businesses, so that Debtor, Collateral Agents, and DIP Lender may assert any rights, title and interest in the proceeds, with the Court to make the final determination of the distribution of those proceeds, including whether the DIP Agreement's proposed distribution of 67% applied to Storj's operations, and 33% paid to DIP Lender towards the DIP Financing obligation is appropriate.

**NOW THEREFORE**, based upon the pleadings, evidence and arguments proffered or adduced at the final hearing held before this Court on October 29, 2026 (the "Final DIP Hearing"), and all objections to the relief requested in the Emergency Motion having been withdrawn, resolved, or overruled by the Court after due and proper notice of the hearing having been given in accordance with Bankruptcy Rules 4001 and 9014 and all applicable Local Bankruptcy Rules, if any, and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

i. The Emergency Motion is hereby granted, and the DIP Financing and the use of Cash Collateral is hereby authorized upon the terms and conditions set forth in this Order and the DIP Credit Agreement as modified by this Order.

ii. The Debtor is hereby authorized to use the proceeds from the DIP Loan subject to the terms and conditions set forth in the DIP Credit Agreement as modified by this Order.

iii. Except as amended, modified, or clarified herein, the DIP Credit Agreement shall constitute valid, binding, enforceable, and non-avoidable obligations of each of the DIP Loan Parties, and shall be fully enforceable against the Debtor and DIP Lender, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in the Chapter 11 Case, in any case under Chapter 7 of the Bankruptcy Code upon the conversion of the Chapter 11 Cases, and/or upon the dismissal of the Chapter 11 Case or any such successor cases (collectively, the "***Successor Cases***"), in accordance with the terms of the DIP Loan Documents and this Order.

iv. Subject only to the Carve Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor's estate to the extent set forth in the Bankruptcy Code (the "***DIP Superpriority Claims***"), with priority over any and all other administrative expense claims, adequate protection claims, and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever.

v. Debtor shall escrow with its counsel all proceeds from all sales of its assets, interests and businesses, so that Debtor, Collateral Agents, and DIP Lender may assert any rights, title and interest in the proceeds, with the Court to make the final determination of the distribution of those proceeds, including whether the DIP Agreement's proposed distribution of 67% applied to Storj's operations, and 33% paid to DIP Lender towards the DIP Financing obligation is appropriate.

vi. Debtor's counsel shall promptly serve this Order and Notice on all creditors and parties in interest and shall promptly thereafter file a certificate of service stating when, how and on whom (including addresses) this Order and Notice was served.

vii. The Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

viii. The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order.

**Prepared and presented by:**

SPILMAN THOMAS & BATTLE PLLC
*/s/ Christopher R. Arthur*
Christopher R. Arthur (WVSB #9192) (*Admitted pro hac vice*)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Blvd. E.
Charleston, WV 25301
(304) 720-4090 *(Phone)*
carthur@spilmanlaw.com
-and-
LAMBERTH, CIFELLI,
ELLIS & NASON, P.A.
*Local Counsel for Storj Labs, Inc.*

By: */s/ Gregory D. Ellis*
Gregory D. Ellis
Georgia Bar No. 245310
6000 Lake Forrest Drive, N.W., Ste. 290
Atlanta, GA 30328
gellis@lcenlaw.com
(404) 262-7373
***Counsel for Storj, Debtor-in possession***

Agreed to:

TUCKER ARENSBERG, P.C.
*/s/ Judith K. Fitzgerald*
Judith K. Fitzgerald, Esq. (PA ID No. 18110)
*Admitted pro hac vice*
Beverly Weiss Manne, Esq. (PA ID No. 34545)
*Admitted pro hac vice*
1500 One PPG Place
Pittsburgh, PA 15222
(412) 566-1212
jfitzgerald@tuckerlaw.com
bmanne@tuckerlaw.com
- and -

ARNALL GOLDEN GREGORY LLP
Darryl S. Laddin, Esq.
Georgia Bar No. 460793
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363-1031
Telephone: (404) 873-8120
*Counsel for Michael Ward and Robert Lamb, in their capacity as Collateral Agents for the Pledgees*